**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

ROXANNE RONAN,
Previously known as Roxanne Bailey,

                Plaintiff,

        v.

THE LEGAL AID SOCIETY,

            Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:24-cv-07201-LDH-RL

**ORAL ARGUMENT REQUESTED**

------------------------------------------------------- X

**DEFENDANT THE LEGAL AID SOCIETY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

**DORSEY & WHITNEY LLP**
51 W. 52nd Street
New York, New York 10007
(212) 415-9200

*Attorneys for Defendant*
*The Legal Aid Society*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ................................................................................................................ 2

STANDARD OF REVIEW ................................................................................................ 7

LEGAL ARGUMENT ........................................................................................................ 7

I.   THE COURT SHOULD DISMISS PLAINTIFF'S TIME BARRED CLAIMS FOR HOSTILE WORK ENVIRONMENT, DISCRIMINATION AND RETALIATION. ................................................................................................................. 7

    A.   Plaintiff's Title VII Claims Based On Conduct Occurring Before August 2, 2023 Are Time Barred. .................................................................................. 7

    B.   Plaintiff's Claims Under The NYSHRL And The NYCHRL Based On Conduct Occurring Before May 28, 2021 Are Time Barred. ................................. 8

II.  PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS DEFICIENT ................. 9

    A.   Plaintiff Fails To Allege LAS Took Action Against Her Because Of Race .......... 10

    B.   LAS's Alleged Conduct Constitutes Petty Slights and Trivial Inconveniences ................................................................................................... 12

III. PLAINTIFF FAILS TO STATE A CLAIM FOR RACE DISCRIMINATION. ............. 12

    A.   Plaintiff's Discriminatory Termination Claim Should Be Dismissed Because She Fails To Allege Facts Supporting An Inference Of Discrimination ...................................................................................................... 13

    B.   Plaintiff Fails To State A Claim Based On LAS's Performance Management ........................................................................................................ 17

IV.  PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION. ............................... 18

    A.   Plaintiff Fails To Allege LAS Engaged In Materially Adverse Actions Or Conduct Likely To Deter An Employee From Engaging In Protected Activity. ............................................................................................................... 19

    B.   Plaintiff Fails To Allege Facts Supporting An Inference Of Retaliation ............. 20

        1.   Plaintiff Alleges Three Instances Of Protected Activity ........................... 20

        2.   No Inference Of Causation Arises Based On Temporal Proximity. .......... 21

V.   PLAINTIFF'S TITLE VII CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES. ........................................ 22

CONCLUSION ................................................................................................................ 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................7

*Benson v. Ruttura & Sons Constr. Co.*,
 No. 20-cv-0853(JS)(ST), 2021 U.S. Dist. LEXIS 65183 (E.D.N.Y. Mar. 31,
 2021) ......................................................................................................................21

*Blair v. L.I. Child & Family Dev. Servs.*,
 No. 16-cv-1591, 2017 U.S. Dist. LEXIS 14177 (E.D.N.Y. Jan. 31, 2017) ............19

*Bledsoe v. Delta Air Lines, Inc.*,
 No. 23-cv-03146 (HG)(JAM), 2024 U.S. Dist. LEXIS 46112 (E.D.N.Y. Mar.
 15, 2024) ...................................................................................................9, 11, 18, 20

*Blige v. City Univ. of N.Y.*,
 No. 1:15-cv-08873 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8354 (S.D.N.Y.
 Jan. 19, 2017)......................................................................................................16, 17

*Bonterre v. City of N.Y.*,
 No. 18-cv-0745(ER), 2021 U.S. Dist. LEXIS 169156 (S.D.N.Y. Sep. 7, 2021)......................22

*Brennan v. Legal Aid Soc'y*,
 No. 19-cv-7756 (VSB), 2020 U.S. Dist. LEXIS 219181 (S.D.N.Y. Nov. 23,
 2020) ......................................................................................................................22

*Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*,
 732 F.2d 726 (9th Cir. 1984) ................................................................................24

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
 467 U.S. 837 (1984)..............................................................................................24

*Cooper v. Franklin Templeton Invs.*,
 No. 22-2763-cv, 2023 U.S. App. LEXIS 14244 (2d Cir. June 8, 2023)......................12, 13, 14

*Cruz v. Amazon Fulfillment,*
 No. 21-cv-3092 (LDH)(VMS), 2024 U.S. Dist. LEXIS 57910 (E.D.N.Y. Mar.
 29, 2024) ................................................................................................................11

*De Figueroa v. N.Y. State*,
   403 F. Supp. 3d 133 (E.D.N.Y. 2019) ...................................................................20

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)...................................................................................5

*Dortch v. N.Y.C. Dep't of Educ.*,
   No. 14-cv-2534 (NGG)(PK), 2016 U.S. Dist. LEXIS 39646 (E.D.N.Y. Mar.
   23, 2016) ...............................................................................................................22

*Dutton v. Penske Logistics*,
   No. 07-cv-0410C, 2008 U.S. Dist. LEXIS 56699 (W.D.N.Y. July 24, 2008).........9

*Fincher v. Depository Tr. & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010)..................................................................................13

*Gibb v. Tapestry, Inc.*,
   No. 18-cv-6888 (LAP), 2018 U.S. Dist. LEXIS 204112 (S.D.N.Y. Nov. 30,
   2018) .........................................................................................................23, 24, 25

*Gooden v. Joseph P. Addabbo Family Health Ctr., inc.*,
   No. 21-cv-6313(RPK)(SJB), 2024 U.S. Dist. LEXIS 13000 (E.D.N.Y. Jan. 24,
   2024) .....................................................................................................................20

*Hamilton v. Elrac, LLC*,
   No. 22-cv-10860 (PGG) (BCM), 2024 U.S. Dist. LEXIS 18199 (S.D.N.Y.
   Jan. 31, 2024).......................................................................................................14

*Hardy v. Lewis Gale Med. Ctr., LLC*,
   377 F. Supp. 3d 596 (W.D. Va. 2019) ..................................................................25

*Henschke v. N.Y. Hosp.-Cornell Med. Ctr.*,
   821 F. Supp. 166 (S.D.N.Y. 1993) .......................................................................23

*Hernandez v. Premium Merch. Funding One, LLC*,
   No. 19-cv-1727, 2020 U.S. Dist. LEXIS 122643 (S.D.N.Y. July 13, 2020).........25

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)....................................................................2

*Jeudy v. City of NY*,
   142 A.D.3d 821 (1st Dep't 2016) .........................................................................8, 9

*Littlejohn v. City of N.Y.*,
   795 F.3d 297 (2d Cir. 2015)..................................................................................14

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
   6 F.4th 293 (2d Cir. 2021) .....................................................................................5

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...............................................................................................25

*Martini v. Fannie Mae*,
178 F.3d 1336 (D.C. Cir. 1999).........................................................................23, 25

*McKenna v. Nassau Cty. News NY*,
No. 2:23-cv-4286 (ARR) (ST), 2023 U.S. Dist. LEXIS 217120 (E.D.N.Y.
Dec. 6, 2023)............................................................................................................2

*McKinnies v. City of N.Y.*,
No. 23-cv-2567 (HG) (JRC), 2024 U.S. Dist. LEXIS 175977 (E.D.N.Y. Sep.
27, 2024) ................................................................................................................14

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)...............................................................................................18

*Murtha v. N.Y. State Gaming Comm'n*,
2019 U.S. Dist. LEXIS 159783 (S.D.N.Y. Sep. 17, 2019)......................................7

*Ndongo v. Bank of China Ltd.*,
No. 22-cv-05896(RA), 2023 U.S. Dist. LEXIS 31238 (S.D.N.Y. 2023) ...............19

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
165 F. Supp. 3d 51 (S.D.N.Y. 2016)................................................................11, 12

*Occidental Life Ins. Co. v. EEOC*,
432 U.S. 355 (1977)...............................................................................................23

*Offor v. Mercy Med. Ctr.*,
167 F. Supp. 3d 414 (E.D.N.Y. 2016) ...................................................................16

*Oliver v. D'Amico*,
2024 U.S. App. LEXIS 11099 (2d Cir. May 7, 2024) ..............................................7

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
653 F. Supp. 3d 80 (S.D.N.Y. 2023)......................................................................14

*Richards v. Dep't of Educ. of N.Y.*,
No. 21-cv-338 (LJL), 2022 U.S. Dist. LEXIS 19674 (S.D.N.Y. Feb. 2, 2022) .............. *passim*

*Roberts v. The Sage Corp.*,
No. 3:20-cv-365, 2021 U.S. Dist. LEXIS 153527 (N.D.N.Y. Aug. 16, 2021).........................8

*Rodriguez v. Connection Tech.*,
65 F. Supp. 2d 107 (E.D.N.Y. 1999) ......................................................................23

*Sander v. Enerco Grp., Inc.*,
  No. 21-cv-10684 (VB), 2023 U.S. Dist. LEXIS 19638 (S.D.N.Y. Feb. 6,
  2023) .................................................................................................................24

*Scott v. City of N.Y. Dep't of Corr.*,
  641 F. Supp. 2d 211 (S.D.N.Y. 2009)....................................................................19

*Shultz v. Congregation Shearith Israel of City of N.Y.*,
  867 F.3d 298 (2d Cir. 2017)....................................................................................18

*Sims v. MacMillan*,
  22 F.3d 1059 (11th Cir. 1994) ...............................................................................24

*Spencer v. Banco Real, S.A.*,
  87 F.R.D. 739 (S.D.N.Y. 1980) .............................................................................23

*Stafford v. Sealright, Inc.*,
  100 F. Supp. 2d 137 (N.D.N.Y. 2000)....................................................................23

*Stetz v. Reeher Enters.*,
  70 F. Supp. 2d 119 (N.D.N.Y. 1999)......................................................................23

*Stidhum v. 161-10 Hillside Auto Ave, LLC*,
  2021 U.S. Dist. LEXIS 119043 (E.D.N.Y. June 25, 2021) .......................23, 24, 25

*Stinson v. Morningstar Credit Ratings, LLC*,
  No. 1:22-cv-06164 (JLR), 2024 U.S. Dist. LEXIS 148804 (S.D.N.Y. Aug. 16,
  2024) ...................................................................................................................8

*Tassy v. Buttigieg*,
  51 F.4th 521 (2d Cir. 2022) ...................................................................................13

*True v. N.Y. State Dep't of Corr. Servs.*,
  613 F. Supp. 27 (W.D.N.Y. 1984)..........................................................................23

*Walker v. UPS*,
  240 F.3d 1268 (10th Cir. 2001) .......................................................................24, 25

*White v. Univ. of Md. Med. Ctr.*,
  642 F. Supp. 3d 504 (D. Md. 2022).........................................................................25

*Williams v. Metro-North Commuter R.R. Co.*,
  2012 U.S. Dist. LEXIS 86631 (S.D.N.Y. June 20, 2012)..................................10, 11

*Williams v. NYCHA*,
  61 A.D.3d 62 (1st Dep't 2009) ............................................................................9, 12

v

*Yarde v. Good Samaritan Hosp.*,
360 F. Supp. 2d 552 (S.D.N.Y. 2005)......................................................................20

**Statutes**

42 U.S.C. § 2000 *et seq*....................................................................................................2

42 U.S.C. § 2000e-5(b) ........................................................................................22, 23, 24

42 U.S.C. § 2000e-5(f)(1) ................................................................................1, 22, 23, 24

42 U.S.C. § 2000e-5e(1) ..................................................................................................7

N.Y.C. Admin. Code § 8-502(d).......................................................................................8

N.Y.C. Admin. Code § 8-107, *et seq.* ...............................................................................2

N.Y. Exec. Law § 297(5) ..................................................................................................8

N.Y. Exec. Law § 296, *et seq.* ..........................................................................................2

**Other Authorities**

29 C.F.R. § 1601.28(a)(2)...............................................................................................25

Fed. R. Civ. P. 12(b)(1)....................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 2, 7

Defendant The Legal Aid Society (the "LAS") submits this memorandum of law in support of its motion to dismiss the Amended Complaint ("Complaint" or "Compl.") of Plaintiff Roxanne Ronan ("Plaintiff") pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## **PRELIMINARY STATEMENT**

This case is about a LAS staff attorney, Plaintiff, who responded to an email from her supervisor resolving her union's grievance about a performance improvement plan LAS had given to her. Unfortunately, the supervisor's email was inadvertently copied to other employees of LAS's Staten Island office.  Unhappy with an email about her performance being copied to her colleagues, Plaintiff sent an email to the same group, with her supervisor's name, "MAQUITA," in the subject line, in which Plaintiff said "[a]re you RETARDED? Fuck you!" Because this hate-filled email included a discriminatory epithet and hostile profanity to a supervisor, LAS reasonably viewed the email as hate speech and decided to terminate Plaintiff's employment.

In her Complaint, Plaintiff claims that this manifestly appropriate decision to terminate her employment occurred because of her race, and in retaliation for her expressions of opposition to an alleged racially hostile work environment at LAS over a number of years.  But Plaintiff fails to set forth in the Complaint any facts capable of creating an inference of a racially hostile work environment or that any animus toward Plaintiff because of her race prompted LAS's actions. Additionally, she has further failed to identify any similarly situated LAS employees who engaged in the same or similar conduct and were treated differently, much less another employee engaging in similarly outrageous conduct while in the process of being disciplined. Accordingly, the Complaint fails to state a cause of action for discrimination or retaliation and should be dismissed in its entirety.

The Court also should dismiss the Complaint on several additional grounds.  First, Plaintiff filed her Complaint before the statutorily mandated 180-day period set forth in 42 U.S.C. § 2000e-5(f)(1). As set forth in more detail below, Title VII unambiguously requires the Equal Employment

1

Opportunity Commission ("EEOC") to investigate each charge of discrimination and retain jurisdiction for 180-days absent certain administrative events such as the agency's dismissal, conciliation, or the EEOC's filing of a suit. Finally, upon dismissal of the federal claims, the Court has discretion not to exercise supplemental jurisdiction over the remaining state law claims, and can dismiss the state law claims on this alternative ground.

## BACKGROUND

Plaintiff alleges that she is a Black former employee of LAS. Compl. ¶ 2. She commenced her employment at LAS in 2018, serving as Staff Attorney from 2020 through August 9, 2023. *Id.* ¶ 13, 16, 61. Plaintiff brings this lawsuit against LAS, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107, *et seq.* ("NYCHRL"). Compl. ¶¶ 79-122.

LAS is the largest social justice law firm in New York City. LAS's mission includes providing criminal defense to low-income New Yorkers, advocating for civil rights and legal reform and fighting for racial equity.[1] To sustain her claims for discrimination and retaliation, Plaintiff alleges a number of vague, undated, and/or facially race-neutral claims that she argues demonstrate a racially hostile work environment at LAS that occurred more than three years prior to her filing a charge of discrimination with the EEOC on May 28, 2024. Compl. ¶¶ 8, 25-48. These time-barred allegations consist of unconnected events involving a variety of individuals, including interactions in 2018 and 2020 at the Staten Island courthouse that Plaintiff had with court

---

[1] *See* Annual Report 2024, Legal Aid Society (Jan. 28, 2024), https://legalaidnyc.org/annual-report-2024/; *About Us*, The Legal Aid Society (last visited Dec. 29, 2024), https://legalaidnyc.org/about/; *Fighting for Racial Equity*, Legal Aid Society (last visited Dec. 29, 2024), https://legalaidnyc.org/what-we-do/fighting-for-racial-equity/. For purposes of a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of information on a party's website or another publicly available website. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020); *McKenna v. Nassau Cty. News NY*, No. 2:23-cv-4286 (ARR) (ST), 2023 U.S. Dist. LEXIS 217120, at *16 (E.D.N.Y. Dec. 6, 2023).

officials and an LAS colleague, conversations between black staff members and LAS leadership surrounding the George Floyd protests, an officemate who refused to acknowledge her, and the resignation of a Diversity, Equity, and Inclusion ("DEI") consultant in May 2021. *Id.* ¶¶ 25-48.

Plaintiff attempts to bolster these years-old allegations of a hostile work environment, retaliation, and discrimination with more examples of vague and/or facially race-neutral claims that are time-barred under Title VII because they occurred prior to August 2, 2023, the date which is 300 days before Plaintiff filed her EEOC charge. *Id.* ¶¶ 8, 49-59. These include an accusation that in August 2022 LAS leaders spread a rumor that Plaintiff was living in another country, *id.* ¶ 50, and a request by LAS that Plaintiff attend an in-person meeting on a day in September 2022 when Plaintiff alleges she was scheduled to work from home. *Id.* ¶ 51. Other than asserting legal conclusions with no factual content, Plaintiff alleges no facts indicating that LAS engaged in either of these actions because of her race.

After Plaintiff protested having to come to the office in-person on the day she was scheduled to work from home, LAS allegedly allowed a union representative to appear on Plaintiff's behalf. *Id.* ¶ 52. When the union representative made a comment concerning the alleged "racist, retaliatory, and hostile work environment" that supposedly caused Plaintiff to modify her schedule, Plaintiff claims that an unidentified supervisor "responded in sum and substance, 'the world is racist, deal with it.'" *Id.* Plaintiff alleges no facts indicating how this supervisor's statement about racism in the "world" affected her work environment at LAS. *Id.*

In January 2023, Plaintiff "indicated to LAS leaders that she was forced to take a leave of absence because of [] anxiety she was experiencing." *Id.* ¶ 53. Plaintiff does not allege that she ever communicated to LAS that her anxiety was allegedly caused by a "discriminatory environment" at LAS or that she otherwise complained of discrimination at that time. *Id.* Plaintiff

3

alleges that LAS accused her of client abandonment in early 2023. *Id.* ¶ 54.  Plaintiff alleges that on April 6, 2023 she was placed on an "unwarranted" performance improvement plan ("PIP") and issued a final written warning, which "after much advocacy" from her Union, LAS subsequently reduced to a first written warning. *Id.* ¶¶ 56, 59. Plaintiff does not allege these disciplinary actions were racially motivated, claiming only that they were retaliatory. *Id.* ¶¶ 56, 58-59. On April 6 and in preparation for a discussion about the PIP, a Microsoft Teams link with the subject line "Roxanne Bailey" "was sent" to all attorneys in the Staten Island office, rather than just Plaintiff. *Id.* ¶ 57. Plaintiff does not allege any facts to tie this allegation to her race, nor does she allege that anyone from LAS intentionally sent the Teams link to the attorney listserv for the office. *Id.*

In July 2023, LAS extended Plaintiff's PIP, again without any allegation by Plaintiff that this extension occurred because of her race, claiming only that it was retaliatory. *Id.* ¶ 60.  Plaintiff grieved this decision, complaining that it was retaliatory. *Id.* On July 28, 2023—still outside the statute of limitations period for Title VII—Plaintiff's supervisor sent an email denying Plaintiff's grievance, again copying the office's attorney listserv. *Id.* ¶¶ 60-61. Plaintiff alleges that this was the "third time" LAS sent sensitive information about her performance to the attorney listserv for the office, *id.* ¶ 61; however, she alleges only *two* instances of such dissemination.  Other than a conclusory statement that the conduct was "reckless and retaliatory," Plaintiff does not allege that anyone from LAS intentionally sent this information to the attorney listserv or that these emails were sent because of her race. *Id.* ¶¶ 57, 61-62. Plaintiff acknowledges LAS took the position that these incidents were inadvertent errors. *Id.* ¶ 71.

In response to LAS's grievance decision, Plaintiff replied to her supervisor, copying the entire attorney listserv, writing, "WHAT THE FUCK." *Id.* ¶ 62; Ex. A & B.[2]  Shortly thereafter,

---

[2] Citations to exhibits in this Memorandum refer to the exhibits appended to the Declaration of Scott Rosenberg in support of LAS's Motion to Dismiss the Amended Complaint.  Plaintiff's July 28, 2023 emails (Exhibits A and B),

Plaintiff sent a second email to her supervisor, again copying the entire attorney listserv, writing: "Are you RETARDED? Fuck you!" *Id.* ¶ 62; Ex. A & B. On August 9, 2023, LAS notified Plaintiff of the termination of her employment on the basis of the "hate speech" and the unprofessional attack on her supervisor contained in these emails, which violated LAS policies. *Id.* ¶ 63. The letter in which LAS notified Plaintiff of the termination of her employment recounts Plaintiff's history of deficient performance, insubordination and "disrespectful behavior." Ex. C. LAS states:

> Earlier this year, due to significant performance concerns, you had been placed on a [PIP] and issued a disciplinary letter which . . . addressed concerns about the quality of your client representation, delayed referrals on behalf of your clients, lack of case documentation, and your refusal to work with your supervisor. The performance improvement process was particularly difficult as you refused to meet with your supervisor, you refused to answer questions about cases, and your use of disrespectful communications. This behavior has been an ongoing pattern which has impeded both, our ability to do the work and our ability to improve the work.

*Id.* at 1. Plaintiff alleges scant facts regarding the basis for her conclusory allegation that her termination was "retaliatory" or that LAS terminated her employment because of her race. *Id.* ¶¶ 64, 73. Plaintiff alleges LAS terminated her employment in retaliation for "her July 2023 complaints" of race discrimination, *id.* ¶ 64; however, nowhere in the Complaint does she allege that she complained of race discrimination in July 2023, including in her July 2023 grievance. *See id.* ¶ 60. Plaintiff also alleges, indecipherably, that LAS terminated her employment because of a hostile work environment, which allegedly caused her to take a leave of absence. *Id.*

Plaintiff alleges in conclusory fashion that Richard Kopacz and other unidentified white employees have at undisclosed times also used offensive terms "in group settings and through email communications but have not been terminated by LAS." *Id.* ¶¶ 66-72. Plaintiff alleges that

---

LAS's letter notifying her of the termination of her employment (Exhibit C), and the Collective Bargaining Agreement (Exhibit E) are incorporated by reference because Plaintiff references and quotes from them in the Complaint, and they are "integral" to the Complaint. *See, e.g.*, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (employment termination letter incorporated by reference); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111-12 (2d Cir. 2010).

5

at some unspecified time before June 2020, Mr. Kopacz "stated that it was his first amendment right to say the 'N' word." *Id.* ¶¶ 40-41, 67. LAS investigated this incident, and "upon information and belief" he was not disciplined. *Id.* ¶ 41. However, Plaintiff does not allege that Mr. Kopacz ever called anyone the "N"-word, the context in which he allegedly made this statement, or that he was ever subject to discipline for unsatisfactory performance as Plaintiff was. Plaintiff also alleges that an unidentified white employee sent an email to a colleague, copying all LAS offices in New York City, in which he referred to the colleague as a "privileged asshole" and "piece of shit," and used the F-word. *Id.* ¶ 69. Although offensive, his language was not discriminatory. LAS disciplined this employee for the remarks, but did not terminate his employment. *Id.* Plaintiff alleges no other facts to suggest that these white employees' conduct was comparable to her emails or that they were similarly situated to Plaintiff.

Plaintiff alleges that following the termination, Twyla Carter, the first black woman and first Asian American to serve as C.E.O. of LAS, told a group of black attorneys who were "protesting" the termination of Plaintiff's employment that "she did not understand why [they] were championing behind Plaintiff as Plaintiff is harmful to black people." *Id.* ¶ 76; *see Twyla Carter*, THE LEGAL AID SOCIETY (last visited March 19, 2025), https://legalaidnyc.org/contact-us/staff/ twyla-carter/. Plaintiff alleges that Ms. Carter "identifies as Asian," but omits that Ms. Carter is also black. *See* Complt. ¶ 23. Plaintiff alleges that LAS leaders, including Ms. Carter, denied her request for paid leave pending the outcome of the grievance process—for a period of approximately six months—and discontinued her healthcare benefits, as a further act of retaliation. *Id.* ¶¶ 75, 77. However, as stated in the termination letter, LAS simultaneously placed Plaintiff on a leave of absence to allow her to continue receiving benefits through the first stage of the grievance process. *See* Ex. C at 1.

On May 28, 2024, Plaintiff filed a charge of discrimination with the EEOC ("Charge"). *Id.* ¶ 8. Fifty days later, and absent factual allegations by Plaintiff that the EEOC engaged in any investigation or conciliation efforts, on July 17, 2024 the EEOC issued a Letter of Determination and Notice of Right to Sue ("Notice"). Compl. ¶ 9; Ex. D.[3] The EEOC stated in the Notice that it interpreted LAS's failure to respond to Plaintiff's charge as "an admission of the allegations made," and drew "an adverse inference with respect to" LAS's "silence." *See* Ex. D at 1. However, neither the Notice nor Plaintiff's allegations offer facts to support the EEOC's conclusory assertion that LAS's silence was an "admission" of Plaintiff's allegations rather than the result of the EEOC's failure to provide LAS with adequate notice of Plaintiff's Charge.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## LEGAL ARGUMENT

**I.     THE COURT SHOULD DISMISS PLAINTIFF'S TIME BARRED CLAIMS FOR HOSTILE WORK ENVIRONMENT, DISCRIMINATION AND RETALIATION.**

**A.     Plaintiff's Title VII Claims Based On Conduct Occurring Before August 2, 2023 Are Time Barred.**

For a claim to be timely under Title VII, the alleged unlawful conduct must have occurred less than 300 days prior to the filing of the plaintiff's EEOC charge. *Oliver v. D'Amico*, 2024 U.S. App. LEXIS 11099, at *5 (2d Cir. May 7, 2024); 42 U.S.C. § 2000e-5e(1). Plaintiff alleges that

---

[3] On a motion to dismiss, a court may consider documents that are incorporated by reference in the Complaint or of which it may take judicial notice, including EEOC charges and EEOC Right to Sue Notices. *See Murtha v. N.Y. State Gaming Comm'n*, 2019 U.S. Dist. LEXIS 159783, at *42-44 (S.D.N.Y. Sep. 17, 2019).

she filed her EEOC charge on May 28, 2024. Compl. ¶ 8. Therefore, Plaintiff's only timely Title VII claims are those based on conduct occurring after August 2, 2023. Accordingly, the Court should dismiss the Title VII hostile work environment claim in its entirety, because Plaintiff does not allege any purportedly harassing conduct occurring between August 2, 2023 and August 9, 2023.[4] Nor does the "continuing violation" doctrine save Plaintiff's hostile work environment claim under Title VII, because she does not allege any timely acts that contributed to an alleged hostile work environment. *See Stinson v. Morningstar Credit Ratings, LLC*, No. 1:22-cv-06164 (JLR), 2024 U.S. Dist. LEXIS 148804, at *20 (S.D.N.Y. Aug. 16, 2024).[5]

Plaintiff's sole timely claim for discrimination under Title VII arises from LAS's August 9, 2023 termination of her employment. *Id.* ¶¶ 63, 66-73. Plaintiff's only timely claim for retaliation under Title VII arises from the same termination, *id.* ¶¶ 63-64, 73, denial of her subsequent request for paid leave, *id.* ¶¶ 75, 77, and Ms. Carter's alleged subsequent statement that "Plaintiff is harmful to black people," *id.* ¶ 76. However, the Court also should dismiss these claims for independent reasons discussed below. *See infra* Points II -V.

**B.   Plaintiff's Claims Under The NYSHRL And The NYCHRL Based On Conduct Occurring Before May 28, 2021 Are Time Barred.**

A substantial portion of Plaintiff's claims under the NYSHRL and the NYCHRL are time barred. The statute of limitations for claims under the NYSHRL and the NYCHRL is three years, measured from May 28, 2024, the date Plaintiff filed her charge with the EEOC. *See* N.Y. Exec.

---

[4] Plaintiff's allegation that Ms. Carter told a group of black attorneys that "Plaintiff is harmful to black people," *id.* ¶ 76, cannot form the basis of a hostile work environment claim as a matter of law, because it occurred after LAS's August 9, 2023 termination of Plaintiff's employment. *See Roberts v. The Sage Corp.*, No. 3:20-cv-365 (FJS/ATB), 2021 U.S. Dist. LEXIS 153527, at *12 (N.D.N.Y. Aug. 16, 2021) ("It is axiomatic[] that incidents occurring after a plaintiff's employment has ended cannot contribute to his hostile work environment").

[5] The "continuing violation" doctrine also does not apply to Plaintiff's hostile work environment claim under the NYSHRL or NYCHRL because, *inter alia*, Plaintiff's timely allegations of a hostile work environment under the NYSHRL and NYCHRL are not "sufficiently related" to her untimely allegations of a hostile work environment to constitute a continuing violation. *See Stinson*, 2024 U.S. Dist. LEXIS 148804, at *20.

8

Law § 297(5); N.Y.C. Admin. Code § 8-502(d); Compl. ¶ 8; *Jeudy v. City of NY*, 142 A.D.3d 821, 822 (1st Dep't 2016). Therefore, to the extent Plaintiff's New York hostile work environment, discrimination and retaliation claims are based on conduct that occurred before May 28, 2021, they are time barred and should be dismissed with prejudice. *See id*. These claims include those based upon Plaintiff's interactions with court staff and Michael Gompers in 2018 and 2020, Compl. ¶¶ 25-28, 39, Edri Meir's refusal to "acknowledge" Plaintiff in January 2020, *id*. ¶¶ 31-32, Richard Kopacz's alleged statement prior to June 2020 that "it was his first amendment right[] to say the 'N' word," *id.* ¶ 41, and the resignation of a consultant in May 2021. *Id.* ¶¶ 42-46. [6] Only Plaintiff's claims of discrimination and retaliation based on conduct occurring on or after May 28, 2021 may proceed under the NYSHRL and NYCHRL.

## II.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS DEFICIENT.

Plaintiff's claim that LAS created a hostile work environment during the limitations periods for her claims under the NYSHRL and NYCHRL (May 28, 2021) should be dismissed because Plaintiff does not allege facts indicating that LAS took such actions against her because of her race. *See Bledsoe v. Delta Air Lines, Inc.*, No. 23-cv-03146 (HG)(JAM), 2024 U.S. Dist. LEXIS 46112, at *11 (E.D.N.Y. Mar. 15, 2024). The claim should also be dismissed because LAS's alleged actions fall far short of the "severe and pervasive" standard required under Title VII

---

[6] Plaintiff's vague allegations that unspecified "conduct" by court staff "continued through Plaintiff's tenure at LAS," Compl. ¶ 39, and that her office mate, Edri Meir's refusal to "acknowledge her" in January 2020 "occurred regularly" through LAS's termination of her employment, *id*. ¶¶ 31-32, fail to state timely claims for hostile work environment. Plaintiff does not allege any facts regarding a single instance of discriminatory treatment by court staff or by Mr. Meir that occurred after May 28, 2021. *See Dutton v. Penske Logistics*, No. 07-cv-0410C, 2008 U.S. Dist. LEXIS 56699, at *8-9 (W.D.N.Y. July 24, 2008) (holding conclusory allegations that untimely hostile work environment conduct occurred on a "continuing" or "daily basis," absent factual allegations of specific instances of such conduct occurring within the statute of limitations period, are insufficient to state a timely claim for hostile work environment). Additionally, Plaintiff's allegation that Mr. Meir's refusal to "acknowledge her" in January 2020 continued to "occur[] regularly" for the three and-a-half years, is implausible in light of Plaintiff's modification of her work-from-home schedule to reduce the time she spent in the office, to the point that "rumors" allegedly spread that she was "living in another country," and her leave of absence for approximately three months in early 2023. *See* Compl. ¶¶49-50, 53.

and amount to mere "petty slights and trivial inconveniences." *See Williams v. NYCHA*, 61 A.D.3d 62, 80 (1st Dep't 2009). Plaintiff alleges that LAS engaged in the following conduct after May 28, 2021 (the "Allegedly Harassing Conduct"): (i) in August 2022, "LAS leaders spread rumors that Plaintiff was living in another country when they knew that she was not," *id*. ¶ 50; (ii) in September 2022, LAS requested, but did not require, Plaintiff to "attend an in-person meeting on a day when she was not scheduled to be in the office;" Plaintiff chose not to attend the meeting and sent a union representative instead, *id*. ¶¶ 51-52; (ii) at the September 2022 meeting, Plaintiff's supervisor told the union representative "the world is racist, deal with it," *id*. ¶ 52; (iii) in January 2023, "leaders at LAS . . . wrongly accused Plaintiff of abandoning her clients," *id*. ¶ 54; (iv) on April 6, 2023, "a Microsoft Teams meeting link with the subject line 'Roxanne Bailey' to discuss [Plaintiff's] PIP was sent to the office's attorney listserv rather than to Plaintiff only," *id*. ¶ 56; and (v) on July 28, 2023, Plaintiff's supervisor sent an email to the attorney listserv containing LAS's decision on Plaintiff's grievance of her PIP, *id*. ¶ 61.

### A.   Plaintiff Fails To Allege LAS Took Action Against Her Because Of Race.

Plaintiff does not plead any facts suggesting that LAS engaged in the Allegedly Harassing Conduct because of her race. This is fatal to her hostile work environment claim.  For a hostile work environment claim to survive a motion to dismiss, a plaintiff must "plead facts tending to show that actions that created the hostile work environment were taken against him because of a prohibited factor" such as race. *Williams v. Metro-North Commuter R.R. Co.*, 2012 U.S. Dist. LEXIS 86631, at *35 (S.D.N.Y. June 20, 2012).  In *Williams v. Metro-North*, for example, the court denied leave to assert a hostile work environment claim under the NYCHRL because, "[t]he harassing acts of which Plaintiff complains . . . do not appear to, and are not alleged to relate to Plaintiff's race or gender." *Id*. at *28 (S.D.N.Y. June 20, 2012).  The court explained:

Plaintiff complains that he is not allowed in the supply house, but nowhere does the

10

> Plaintiff allege that it is because of his race or because of his gender. Plaintiff complains that he is made to clean more cars than the other coach cleaners, but again he fails to allege it was because of his race or gender. Elsewhere, Plaintiff alleges that these things happened to him in retaliation.

*Id.* Similarly, here, the alleged actions LAS purportedly took against Plaintiff after May 28, 2021 "do not appear to, and are not alleged to relate to Plaintiff's race." *Id.* at 28.

Rather than claiming LAS's actions were based on her race, Plaintiff claims that: (i) LAS's request for her to attend a meeting was "unfair[]" and "retaliatory [in] nature," Compl. ¶ 51, (ii) LAS "wrongly" accused her of client abandonment, *id.* ¶ 54, (iii) the circulation of a Microsoft Teams meeting link and email regarding her grievance caused her "much embarrassment" and "shock," *id.* ¶¶ 57, 62, and that (iv) LAS knowingly spread false rumors that she was living in another country, *id.* ¶ 50. She does not connect any of these actions, or her supervisor's alleged statement to a union representative, "the world is racist, deal with it," *id.* ¶ 52, to her race.

In *Cruz v. Amazon Fulfillment*, this Court dismissed a hostile work environment claim that was based on facially neutral incidents that failed to raise an inference of discrimination, holding:

> Although Plaintiff alleges several instances of hostility toward her, none of these allegations appear connected to her ethnicity as a Hispanic woman. For example, she alleges . . . an unknown African American male employee told her mother, "fuck you." Nothing about this allegation, however, suggests the comment was motivated by discriminatory animus. . . . Rather, these allegations describe facially neutral incidents that, without more, fail to raise an inference of discrimination.

*Cruz*, No. 21-cv-3092 (LDH)(VMS), 2024 U.S. Dist. LEXIS 57910, at *7-8 (E.D.N.Y. Mar. 29, 2024). Plaintiff's hostile work environment allegations should be dismissed because, like the plaintiff in *Cruz*, although she alleges she experienced instances of facially race-neutral hostility, she fails to connect the hostility to her race. *See id.*; *Bledsoe*, 2024 U.S. Dist. LEXIS 46112, at *13 (hostile work environment claim based on "generalized hostility [and] generally uncivilized behavior," absent plausible allegations of discriminatory intent, must fail); *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (dismissing hostile work environment claim

11

where plaintiff offered "nothing but bare speculation to link [employer's] behavior to any discriminatory [] motive or intent"). Plaintiff's claim should therefore be dismissed.

**B.    LAS's Alleged Conduct Constitutes Petty Slights and Trivial Inconveniences.**

Plaintiff's hostile work environment claim also should be dismissed because LAS's Allegedly Harassing Conduct amounts to nothing more than petty slights and trivial inconveniences. *See Williams v. NYCHA*, 61 A.D.3d at 80. In *Nieblas-Love* for instance, the plaintiff alleged that a supervisor "used racial slurs during heated arguments" with plaintiff. 165 F. Supp. 3d at 68. The court held that "[a]t most, . . . those allegations amount to isolated and episodic incidents of discriminatory language that are not sufficient to support a hostile work environment claim under" the NYSHRL or NYCHRL. *Id*. Here, a mere request to attend a meeting, a statement that "the world is racist," rumors that Plaintiff was living in another country, an accusation of client abandonment, and two emails copying an office attorney listserv, are far more benign than the conduct in *Nieblas-Love*. Accordingly, LAS's Allegedly Harassing Conduct cannot sustain Plaintiff's hostile work environment claim. *See id*.; *Williams*, 61 A.D.3d at 80.

**III.    PLAINTIFF FAILS TO STATE A CLAIM FOR RACE DISCRIMINATION.**

Plaintiff's non-time barred claims of discrimination should be dismissed because they are both wholly conclusory and deficient as a matter of law. To state a claim for discrimination under Title VII, a plaintiff must plausibly allege: (i) that she suffered an adverse employment action; and (ii) facts sufficient to "provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Cooper v. Franklin Templeton Invs*., No. 22-2763-cv, 2023 U.S. App. LEXIS 14244, at *5 (2d Cir. June 8, 2023). Under the NYCHRL, a plaintiff need not allege that she suffered an adverse employment action, but rather, that she was treated "less well" because of her membership in a protected class. *See Richards v. Dep't of Educ. of N.Y*., No. 21-cv-338 (LJL), 2022 U.S. Dist. LEXIS 19674, at *63 (S.D.N.Y. Feb. 2, 2022). However, the

"NYCHRL is not a general civility code," and the plaintiff must still allege facts sufficient for "showing that the conduct is caused by a discriminatory motive." *Id*. at 63-64 (citations omitted); *Cooper*, 2023 U.S. App. LEXIS 14244, at *6. (dismissing discrimination claim under NYSHRL and NYCHRL for failure to plausibly allege employer was motivated by discriminatory intent).

Plaintiff claims that LAS discriminated against her by (i) subjecting her to "harassing behavior" and "false accusations," (ii) "failing to fully investigate" her complaints of discrimination and "take prompt remedial action," (iii) "micromanagement," and (iv) terminating her employment. Compl. ¶¶ 81, 93, 105. First, Plaintiff's allegations of "harassing behavior" and "false accusations" fail for the reasons set forth in Point II *supra*, and because such actions are neither discrete acts nor adverse employment actions. *See Tassy v. Buttigieg*, 51 F.4th 521, 529 (2d Cir. 2022). Second, her claim that LAS discriminated against her by failing to investigate her complaints and taking remedial action is deficient as a matter of law. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010). Third, Plaintiff's claim that LAS discriminated against her by subjecting her to "micromanagement" fails because she does not allege a single instance of purported "micromanagement." Plaintiff alleges that LAS took certain facially race-neutral actions to manage her performance. Plaintiff alleges that in April 2023, LAS placed her on a PIP, which was later extended, and issued her a written warning. *See* Compl. ¶¶ 56, 60.  She also vaguely alludes to a "letter of termination" that her union received for her in February 2023. *See id*. ¶ 55. Although Plaintiff does *not* allege these actions were discriminatory, to the extent the Court nevertheless considers these alleged acts to constitute "micromanagement," they are deficient. Finally, the discriminatory employment termination claim fails because Plaintiff's allegations of disparate treatment are conclusory.

A. **Plaintiff's Discriminatory Termination Claim Should Be Dismissed Because She Fails To Allege Facts Supporting An Inference Of Discrimination.**

13

Plaintiff's discriminatory termination claim should be dismissed under Title VII, the NYSHRL and NYCHRL because she fails to plead facts to support an inference that race was a motivating factor in LAS's decision to terminate her employment. *See McKinnies v. City of N.Y.*, No. 23-cv-2567 (HG) (JRC), 2024 U.S. Dist. LEXIS 175977, at *19 (E.D.N.Y. Sep. 27, 2024); *Cooper*, 2023 U.S. App. LEXIS 14244, at *6. Plaintiff does not allege that LAS engaged in conduct that evidences racial animus towards Plaintiff. Plaintiff's allegation regarding LAS's first black C.E.O., Twyla Carter's defense of LAS's decision to terminate Plaintiff's employment does not evidence racial animus. *See* Compl. ¶ 76. Plaintiff alleges that Ms. Carter told a group of black attorneys who were "protesting" Plaintiff's employment termination, that "she did not understand why [they] were championing behind Plaintiff as Plaintiff is harmful to black people." *Id.* Plaintiff does not tie Ms. Carter's statement to Plaintiff's race. Instead, Ms. Carter's statement concerned the race of a group of people whom Ms. Carter believes Plaintiff harmed, namely other black people, including LAS employees and clients. Even if Ms. Carter's statement were interpreted as alluding to Plaintiff's race, it still does not evidence racial animus. *See Hamilton v. Elrac, LLC*, No. 22-cv-10860 (PGG) (BCM), 2024 U.S. Dist. LEXIS 18199, at *17–18 (S.D.N.Y. Jan. 31, 2024) (holding plaintiff failed to plausibly allege statement, "your kind is not the right fit for the position," concerned his protected status); *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023) ("Statements that merely acknowledge Plaintiff's membership in a protected class do not support an inference of discrimination.").

Plaintiff attempts to raise an inference of discriminatory intent through conclusory allegations that LAS imposed more lenient discipline on white employees who used "offensive" language than it imposed on her. Her allegations of disparate treatment are deficient because she does not plead facts to suggest that her purported comparators were similarly situated to her, which

precludes an inference of discriminatory motive. *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) ("Adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination."). Her conclusory assertions of disparate treatment based on LAS's alleged "violation" of, or decision to "bypass" the "progressive discipline policy" in the CBA for Plaintiff, but not white employees, also is deficient because the CBA does not contain a progressive discipline policy. *See* Compl. ¶¶ 56, 64, 67, 72; Ex. E.

LAS terminated Plaintiff's employment after she sent two emails to her supervisor, copying the entire attorney listserv both times, writing: "WHAT THE FUCK," and "Are you RETARDED? Fuck you!" *See* Compl. ¶¶ 62-63; Ex. A & B. Plaintiff alleges LAS "cit[ed] 'hate speech' and 'attacking a colleague' as the basis for her termination." *Id.* ¶ 63. LAS's letter terminating Plaintiff's employment also highlighted Plaintiff's deficient performance and history of insubordination and "disrespectful behavior." *See* Ex. C. Plaintiff claims that LAS subjected her to disparate treatment because Richard Kopacz, Virginia Conroy and other unidentified white employees have at unspecified times also used "offensive terms" but have not been terminated by LAS. *Id.* ¶¶ 66-72. Plaintiff alleges that Mr. Kopacz "stated that it was his first amendment right to say the 'N' word." *Id.* ¶¶ 40-41, 67. Plaintiff claims Virginia Conroy "harassed and engaged in offensive communication against Black employees" but "was never subjected to discipline." *Id.* ¶ 70. Plaintiff also alleges that during the COVID-19 Pandemic, an unidentified third comparator stated in an email to a colleague, copying all LAS offices in New York City: "Hey […] you privileged asshole, my 2-year-old and 4-year-old ain't eligible for the vaccine […] Google it, you piece of shit. Fuck standing next to my client. Get me the fuck out of here." *Id.* ¶ 69. LAS disciplined this employee, but did not terminate his employment. *Id.* Plaintiff pleads no other facts regarding these instances to suggest that these employees were similarly situated to Plaintiff.

15

Plaintiff's allegations of disparate treatment are deficient because she does not plead facts to support a plausible inference that the purported white comparators were similarly situated to her. *See, e.g.*, *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 431 (E.D.N.Y. 2016). "[A] plaintiff relying on disparate treatment [allegations] must show [that she] was similarly situated . . . to the individuals with whom [she] seeks to compare [herself] and that the similarly situated comparators received better treatment." *Blige v. City Univ. of N.Y.*, No. 1:15-cv-08873 (GBD) (KHP), 2017 U.S. Dist. LEXIS 8354, at *26 (S.D.N.Y. Jan. 19, 2017) (citations and quotations omitted). "In assessing whether plaintiff and the comparator(s) are similarly situated, relevant factors include, *inter alia*, whether they are subject to the same standards governing . . . discipline, and whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id*. at 26 (citations and quotations omitted). Courts within the Second Circuit regularly dismiss disparate treatment claims on the pleadings, where, like here, a complaint lacks "details regarding the purported comparators, *e.g.*, who they are, [and] how their conduct compared to plaintiffs." *Id*. at 27 (quotations omitted). In *Blige*, the court dismissed a disparate treatment claim because the plaintiff did not identify his purported comparators or allege facts to suggest he was similarly situated to the employees whom he claimed received better treatment. *Id*. at 27-28. Similarly here, Plaintiff does not identify the third comparator or allege any facts whatsoever regarding the "offensive conduct" in which Ms. Conroy purportedly engaged. *See* Compl. ¶¶ 69-70.

Plaintiff's pleading also falls short because, although she identifies the conduct in which Mr. Kopacz and the unidentified third comparator engaged, she fails to plead "facts to support that [they] are similarly situated [to her] in all material respects." *Richards*, 2022 U.S. Dist. LEXIS 19674, at *30-31. As with her allegations regarding Ms. Conroy, Plaintiff does not allege that either Mr. Kopacz or the unidentified third comparator had a history of insubordination and

16

disrespectful behavior, that they were in the process of being disciplined for unsatisfactory performance or that they engaged conduct of a similar nature and of a similar seriousness to Plaintiff's.  Plaintiff alleges that Mr. Kopacz "stated that it was his first amendment right to say the 'N' word," *Id*. ¶¶ 41, 67, but does not allege that he actually used this word or disparaged anyone by calling them that word, or that he attacked his supervisor. *See id.* ¶ 40. Plaintiff similarly does not allege that the unidentified third comparator engaged in hate speech or attacked his supervisor, as Plaintiff did. *See* Compl. ¶ 69. Instead, she alleges that he sent an email to a colleague containing profanity, and was disciplined as a result. *Id*. Plaintiff thus fails to allege that any purported comparators engaged in comparable conduct. An inference of discriminatory motivation, therefore, does not arise. *See Richards*, 2022 U.S. Dist. LEXIS 19674, at *34.[7]

**B.    Plaintiff Fails To State A Claim Based On LAS's Performance Management.**

Plaintiff does not claim that LAS's performance management actions were discriminatory. However, to the extent the Court nevertheless considers them in connection with this claim, they are deficient because Plaintiff does not connect such actions to her race.  Plaintiff alleges that on April 6, 2023, "LAS leaders" placed her on a PIP and issued her a "final written warning."  Compl. ¶ 56.  The "final written warning" was later reduced to a "first written warning," although the PIP was extended in July 2023.  *Id*. ¶¶ 59-60.  She does not allege that LAS's decision to implement a PIP or issue her a written warning were racially motivated.  Instead, she claims the PIP and warning were "unwarranted" and violated LAS's purported "policies concerning progressive discipline" and the CBA.  *Id*. ¶ 56. Plaintiff also alleges that in February 2023, LAS sent her union "a letter of termination for Plaintiff."  *Id*. ¶ 55.  Plaintiff does not allege that the "letter of termination" was

---

[7] Plaintiff's conclusory assertion that "Mr. Meir was given opportunities to second-chair hearing and trials while Plaintiff was not given such opportunities," Compl. ¶ 33, is deficient for the same reasons her disparate treatment allegations regarding her employment termination are.  She fails to allege any facts whatsoever to suggest that she and Mr. Meir were similarly situated.  *See Blige*, 2017 U.S. Dist. LEXIS 8354, at *26.

discriminatory nor tie it to her race.  Instead, she merely alleges that it was "concerning" because she "did not have a disciplinary history that would warrant termination."  *Id*.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION.

Plaintiff's retaliation claim fails because several of LAS's alleged retaliatory acts constitute petty slights and trivial inconveniences that are insufficient to sustain a retaliation claim, and because she does not allege facts indicating that LAS took any actions against her because she engaged in protected activity. To state a claim for retaliation under Title VII, a Plaintiff must allege: (1) she engaged in a protected activity by complaining of unlawful discrimination to her employer; (2) the employer's knowledge of the protected activity; (3) a materially adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017). Under Title VII, retaliatory action must be "materially" adverse, causing "significant" harm. *Muldrow v. City of St. Louis*, 601 U.S. 346, 357-58 (2024). Under New York law, a plaintiff must allege that her employer engaged in conduct "reasonably likely to deter a person from engaging in protected activity," rather than a materially adverse action. *See Bledsoe*, 2024 U.S. Dist. LEXIS 46112, at *18.

Plaintiff alleges that LAS retaliated against her by: (1) asking her to attend an in-person meeting, *id.* ¶ 51; (2) accusing her of client abandonment and sending a termination letter to her union during her leave of absence, *id.* ¶¶ 54-55; (3) placing her on a PIP, which it later extended, and issuing her a written warning, *id.* ¶¶ 56, 60; (4) circulating a Teams link with her name in the subject line and a decision on her grievance of the PIP to the attorney listserv, *id.* ¶¶ 57, 61; (5) terminating her employment, *id.* ¶ 63; (6) Ms. Carter's statement that Plaintiff is "harmful to black people," *id.* ¶ 76; and (7) denying her request for post-termination paid leave, *id.* ¶¶ 75, 77. As set forth below, none of Plaintiff's allegations is sufficient to withstand a motion to dismiss.

A.    **Plaintiff Fails To Allege LAS Engaged In Materially Adverse Actions Or Conduct Likely To Deter An Employee From Engaging In Protected Activity.**

Plaintiff fails to state a claim for retaliation based on allegations that (i) LAS asked her to attend an in-person meeting, *id.* ¶ 51; (ii) her supervisor circulated a Teams link with her name in the subject line and an email denying a grievance to the attorney listserv, *id.* ¶¶57, 61; (iii) Ms. Carter's statement that Plaintiff is "harmful to black people," *id.* ¶ 76; and (iv) LAS's denial of Plaintiff's request for six months of paid leave (to which she was not entitled) "pending the outcome of the grievance process," *id.* ¶ 75, 77, because such acts are nothing more than "petty slights or trivial inconveniences" that are not "reasonably likely to deter a person from engaging in protected activity." *See Ndongo v. Bank of China Ltd.*, No. 22-cv-05896(RA), 2023 U.S. Dist. LEXIS 31238, at *21 (S.D.N.Y. 2023) ("petty slights or minor annoyances that often take place at work are not actionable retaliation") (quotations omitted). Plaintiff's only timely allegations of retaliation under Title VII, Ms. Carter's alleged statement and LAS's denial of Plaintiff's request for paid leave, also do not constitute materially adverse actions. *See Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) ("[N]egative or otherwise insulting statements are hardly even actions, let alone adverse actions."). LAS's denial of Plaintiff's request for paid leave from August 9, 2023 until January 2024 could not have been retaliatory because Plaintiff had no entitlement to such leave under the CBA or otherwise. *See* Ex. E; *Blair v. L.I. Child & Family Dev. Servs.*, No. 16-cv-1591, 2017 U.S. Dist. LEXIS 14177, at *42 (E.D.N.Y. Jan. 31, 2017). LAS placed Plaintiff on an unpaid leave through the first step of the grievance process to allow her to continue receiving health insurance benefits after August 9, 2023. *See* Ex. C.[8]

---

[8] To the extent Plaintiff attempts to raise an inference of retaliatory intent by alleging that "LAS regularly allowed paid leave for White employees during the grievance process," but denied her request for paid leave, *see* Compl. ¶ 75, such allegation fails for the same reason her allegations of disparate treatment regarding her discrimination claim fail. *See supra* Point III.A. Plaintiff does not identify any potential comparators for her retaliation claim nor allege any facts to suggest that LAS treated her differently than other employees who were similarly situated to her. *See id.*

19

**B.      Plaintiff Fails To Allege Facts Supporting An Inference Of Retaliation.**

Plaintiff's retaliation claim also fails because she does not plausibly allege that LAS took any alleged actions against her because she engaged in protected activity. Plaintiff attempt to raise an inference of causation based on temporal proximity between her purported protected activity and LAS's alleged retaliatory acts.[9] Courts within the Second Circuit routinely find that the passage of two or three months cannot support an inference of causation. *See Gooden v. Joseph P. Addabbo Family Health Ctr., inc.,* No. 21-cv-6313(RPK)(SJB), 2024 U.S. Dist. LEXIS 13000, at *21-22 (E.D.N.Y. Jan. 24, 2024); *De Figueroa v. N.Y. State*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("a lapse of time beyond two or three months will break the causal inference"). An intervening event also may defeat an inference of causation based on temporal proximity. *See*, *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("In this Circuit, an inference of causation is defeated . . . if there was an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge."). Here Plaintiff's July 28, 2023 emails containing hate speech constitute an intervening causal event that defeats any inference of causation based on temporal proximity.

**1.      Plaintiff Alleges Three Instances Of Protected Activity.**

Plaintiff alleges she engaged in protected activity on three occasions in the final two years of her employment at LAS. First, she alleges that in September 2022, her union representative reported to Plaintiff's supervisor a "racist, retaliatory and hostile work environment that caused Plaintiff to modify her schedule." *Id.* ¶ 52. Second, on an unknown date after April 6, 2023, Plaintiff allegedly complained that LAS placed her on a PIP in retaliation for unspecified

_____

[9] Ms. Carter's alleged statement defending LAS's lawful termination of Plaintiff's employment does not evidence retaliatory animus for the same reasons it does not evidence discriminatory animus. *See supra* Point III.A. Plaintiff's own pleading describes the non-retaliatory reason behind her firing—the use of hate speech and abusive language in an all-staff email. Compl. ¶¶ 62–63. *See Bledsoe*, 2024 U.S. Dist. LEXIS 46112, at *17-18.

complaints of discrimination. *Id*. ¶ 59. Third, in July 2023, Plaintiff alleges she filed a grievance complaining that LAS's extension of her PIP was retaliatory. *Id*. ¶ 60. Plaintiff's allegation that in January 2023, she "indicated to LAS leaders that she was forced to take a leave of absence because of [] anxiety she was experiencing," does not constitute protected activity because she does not allege that she ever told LAS that her anxiety was allegedly caused by a "discriminatory environment" or that she otherwise complained of discrimination at that time. *See Id*. ¶ 53.[10]

### 2.    No Inference Of Causation Arises Based On Temporal Proximity.

Plaintiff fails to raise an inference of causation based on temporal proximity between her alleged protected activity and LAS's purported retaliatory acts. First, Plaintiff fails to raise an inference of causation based on temporal proximity between her alleged protected activity in September 2022 and any alleged actions by LAS, because she does not allege that LAS took any actions against her within two to three months of such protected activity. *See id.* ¶ 52. Following her September 2022 complaint, she does not allege that LAS took any actions against her until approximately February 2023. *See id.* ¶¶ 54-58.[11] Second, Plaintiff also does not raise an inference of causation based on temporal proximity between her alleged "complain[t] that the PIP was retaliatory" at some unspecified time after LAS implemented her PIP on April 6, *id.* ¶ 59, and any actions LAS took following such complaint, the first of which allegedly occurred on July 23, 2023 when LAS extended her PIP, *id.* ¶¶ 60-61. Plaintiff's failure to specify when she allegedly complained that her PIP was retaliatory precludes an inference of retaliation based on temporal

---

[10] Plaintiff's decision to take a leave of absence also does not constitute protected activity. *See Benson v. Ruttura & Sons Constr. Co*., No. 20-cv-0853(JS)(ST), 2021 U.S. Dist. LEXIS 65183, at *15 (E.D.N.Y. Mar. 31, 2021). Additionally, Plaintiff's vague allegations about "voicing her concerns about discrimination in the workplace" and unspecified "complaints concerning discrimination," and of a "hostile work environment and disparate treatment of Black employees," Compl. ¶¶ 49, 58-60, 73, should be disregarded because Plaintiff does not allege facts to support such allegations in the Complaint.

[11] Plaintiff does not specify when during her leave of absence LAS allegedly accused her of client abandonment, which precludes an inference of causation based on temporal proximity. *See Richards*, 2022 U.S. Dist. LEXIS 19674, at *56.

21

proximity from arising. *See, e.g*, *Richards*, 2022 U.S. Dist. LEXIS 19674, at \*56-57; *Bonterre v. City of N.Y.*, No. 18-cv-0745(ER), 2021 U.S. Dist. LEXIS 169156, at \*18 (S.D.N.Y. Sep. 7, 2021).

Finally, although Plaintiff alleges that LAS retaliated against her shortly after she engaged in protected activity on July 23, 2023 by filing a grievance of LAS's extension of her PIP, *id*. ¶¶ 60, 63, 75-77, she again fails to raise an inference of causation based on temporal proximity. Plaintiff's July 28, 2023 emails, in which she engaged in hate speech and attacked her supervisor, constitute an intervening event that defeats an inference causation based on temporal proximity between her July 23, 2023 grievance and (i) LAS's termination of her employment, (ii) Ms. Carter's August 9, 2023 statement, and (iii) LAS's denial of Plaintiff's request for six months of paid leave, ¶¶ 60, 63, 75-77. *See Brennan v. Legal Aid Soc'y*, No. 19-cv-7756 (VSB), 2020 U.S. Dist. LEXIS 219181 (S.D.N.Y. Nov. 23, 2020) (intervening events defeat inference of causation based on temporal proximity); *Dortch v. N.Y.C. Dep't of Educ.*, No. 14-cv-2534 (NGG)(PK), 2016 U.S. Dist. LEXIS 39646, at \*22-23 (E.D.N.Y. Mar. 23, 2016). Plaintiff's retaliation claim should therefore be dismissed.

## V.   PLAINTIFF'S TITLE VII CLAIMS SHOULD BE DISMISSED BECAUSE SHE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Title VII authorizes an aggrieved person to bring a civil action in court only after exhaustion of all available administrative remedies, including by filing a charge with the EEOC and culminating with the EEOC's issuance of a statutorily prescribed notice of right-to-sue. Specifically, Title VII provides that the EEOC may issue a notice-of-right to sue upon determining "there is not reasonable cause to believe the charge is true," 42 U.S.C. § 2000e-5(b), or alternatively the EEOC must retain jurisdiction over the charge for at least 180 days without either filing its own civil action or entering into a conciliation agreement to which the person aggrieved is a party. 42 U.S.C. § 2000e-5(f)(1). Plaintiff failed to exhaust her administrative remedies

22

because she did not obtain from the EEOC a notice of right-to-sue containing a determination from the EEOC that "there is not reasonable cause to believe the charge is true," nor allow the EEOC to retain jurisdiction over the charge for at least 180 days.  Instead, the EEOC issued Plaintiff a Notice on July 17, 2024, only fifty days after she filed her charge on May 28, 2024. Complaint ¶¶ 8-9.

As the Supreme Court observed in *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 361 (1977),  "a natural reading of [§ 2000e-5(f)(1)] can lead only to the conclusion that…a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but that he must wait 180 days before doing so."  Numerous courts in this district and elsewhere have granted motions to dismiss where, as here, a plaintiff commences a Title VII claim without having obtained from the EEOC a notice containing a determination that "there is not reasonable cause to believe the charge is true" and without EEOC's exercising jurisdiction over a charge for at least 180 days.  *See, e.g.*, *Stidhum v. 161-10 Hillside Auto Ave, LLC*, 2021 U.S. Dist. LEXIS 119043, at \*1 (E.D.N.Y. June 25, 2021); *Gibb v. Tapestry, Inc.*, No. 18-cv-6888 (LAP), 2018 U.S. Dist. LEXIS 204112, at \*10-11 (S.D.N.Y. Nov. 30, 2018).[12]

The Court likewise should dismiss Plaintiff's Title VII claims here. In Plaintiff's Notice, the EEOC did not find that "there is not reasonable cause to believe that the charge is true." Ex. D. Accordingly, by issuing Plaintiff a notice of right-to-sue before the 180-day period expired, the EEOC violated its "express statutory duty to investigate every charge [that is] filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Martini v. Fannie Mae*, 178 F.3d 1336, 1347 (D.C. Cir. 1999). Because "Congress has

---

[12] Several other courts within the Second Circuit have granted motions to dismiss based on the EEOC's issuance of early notices in violation of 42 U.S.C. § 2000e-5(b) and 2000e-5(f)(1).  *See Rodriguez v. Connection Tech.*, 65 F. Supp. 2d 107, 110-11 (E.D.N.Y. 1999); *Stafford v. Sealright, Inc.,* 100 F. Supp. 2d 137, 140 (N.D.N.Y. 2000); *Stetz v. Reeher Enters.*, 70 F. Supp. 2d 119, 125 (N.D.N.Y. 1999); *Henschke v. N.Y. Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 171 (S.D.N.Y. 1993); *True v. N.Y. State Dep't of Corr. Servs.,* 613 F. Supp. 27, 30 (W.D.N.Y. 1984); *Spencer v. Banco Real, S.A.,* 87 F.R.D. 739, 743-44 (S.D.N.Y. 1980).

unequivocally addressed the exclusive conditions under which Title VII complainants may bring a private suit in federal court," the EEOC's early Notice to Plaintiff is "invalid." *Gibb*, 2018 U.S. Dist. LEXIS 204112, at \*14. The Court should therefore dismiss Plaintiff's Title VII claims without prejudice to renew them once the EEOC either dismisses her charge based the absence of "reasonable cause to believe the charge is true" or carries out its statutory obligation to investigate and conciliate her charge for an additional 130 days. *See, e.g.*, *Stidhum*, 2021 U.S. Dist. LEXIS 119043, at \*13; *Gibb*, 2018 U.S. Dist. LEXIS 204112, at \*22.[13]

In contrast, the circuit courts of appeals that have permitted early notices have analyzed § 2000e-5(f)(1) in isolation, erroneously concluded it is ambiguous, and then deferred to the EEOC's interpretation of the statute and based their decisions upon a finding that the EEOC's interpretation was reasonable. *See Sims v. MacMillan*, 22 F.3d 1059, 1062 (11th Cir. 1994); *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984); *see also Walker v. UPS*, 240 F.3d 1268, 1275 (10th Cir. 2001) (construing § 2000e-5(f)(1) and 2000e-5(b) together, concluding tension between the two provisions rendered statute ambiguous, and affording *Chevron* deference to EEOC's interpretation). District court decisions within the Second Circuit allowing plaintiffs to bring Title VII claims notwithstanding receipt of early notices also have hinged on the courts' affording deference under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984) to the

---

[13] Plaintiff alleges that the EEOC issued the Notice upon "finding that Defendant had engaged in employment discrimination in violation of Title VII," Compl. ¶ 9. Although not material to the exhaustion issue, the Court should not accept this allegation as true in considering the motion to dismiss, because the Notice contradicts this allegation. *See Sander v. Enerco Grp., Inc.*, No. 21-cv-10684 (VB), 2023 U.S. Dist. LEXIS 19638, at \*4-5 (S.D.N.Y. Feb. 6, 2023). Contrary to Plaintiff's allegation, the EEOC stated in the Notice that since LAS did not respond to the charge, LAS "failed to meet the burden of proof and that said silence is an admission of the allegations made and exercises its discretion to draw an adverse inference with respect to such." *See* Ex. D at 1. The EEOC's "adverse inference" arising from LAS's "silence" is not a finding that LAS "engaged in employment discrimination" nor a reasonable basis for the EEOC to have concluded that LAS admitted to Plaintiff's allegations. That is manifestly the case here where the EEOC arbitrarily failed to consider the possibility that LAS did not respond to the charge because LAS never received proper notice of it. Had LAS received adequate notice of the charge, it would have responded and participated in the EEOC's investigation and conciliation efforts.

EEOC's interpretation of the statute. *See e.g., Hernandez v. Premium Merch. Funding One, LLC*, No. 19-cv-1727, 2020 U.S. Dist. LEXIS 122643, at *18 (S.D.N.Y. July 13, 2020).

The Court should disregard such contrary authority for multiple reasons. First, Title VII is unambiguous. It "allows a claimant to bring suit only if the EEOC fails to resolve the dispute within 180 days." *White v. Univ. of Md. Med. Ctr.*, 642 F. Supp. 3d 504, 512 (D. Md. 2022); s*ee Stidhum*, 2021 U.S. Dist. LEXIS 119043, at *8-9 ("Congress has unambiguously prescribed the type of notice that is a precondition to a Title VII suit"); *Gibb v. Tapestry, Inc.*, 2018 U.S. Dist. LEXIS 204112, at *10-11; *Martini*, 178 F.3d at 1346-47; *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 609-10 (W.D. Va. 2019).

The Court also should disregard such contrary authority because it is no longer persuasive in light of the Supreme Court's decision overruling *Chevron* in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The decisions permitting early notices are not based on an independent analysis of Title VII, but rather upon courts' affording deference to the EEOC's interpretation of the statute. *See, e.g.*, *Walker v. UPS*, 240 F.3d 1268, 1275 (10th Cir. 2001). Pursuant to *Loper*, this Court may not afford deference to the EEOC's interpretation of Title VII; it must, instead, exercise "independent judgment" in construing Title VII. *Id.* at 412. The Court should disregard the cases where courts failed to conduct such independent analyses and join the chorus of courts upholding Title VII's prohibition of early notices and the public policies favoring exhaustion of administrative remedies prior to a lawsuit.[14]

### CONCLUSION

Defendant respectfully requests that the Court dismiss the Complaint in its entirety.

---

[14] The Court should also disregard contrary decisions to the extent they are based on the EEOC's issuance of early notices pursuant to 29 C.F.R. § 1601.28(a)(2). Here, the EEOC did not issue Plaintiff's Notice pursuant to 29 C.F.R. § 1601.28(a)(2) nor satisfy the prerequisites set forth in that regulation for the early issuance of a notice of right-to-sue. *See* Ex. D; 29 C.F.R. § 1601.28(a)(2).

Dated: New York, New York
       April 7, 2025

Respectfully submitted,


/s/ Nicholas J. Pappas
Nicholas J. Pappas
Krista E. Bolles

DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200
pappas.nicholas@dorsey.com
bolles.krista@dorsey.com

*Attorneys for Defendant*
*The Legal Aid Society*