UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____x

ROXANNE RONAN,                     :
Previously known as                :
Roxanne Bailey                     :
                                   :        Case No.: 1:24-cv-07201-LDH-RML
v.                                 :        **ORAL ARGUMENT REQUESTED**
                                   :
THE LEGAL AID SOCIETY              :
_____x

---

## PLAINTIFF ROXANNE RONAN'S AMENDED[1] MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LEGAL AID SOCIETY'S MOTION TO DISMISS

---

Naphtalie Azor, Esquire
Attorney for Plaintiff
AZOR LAW, PLLC
68 Jay Street, Suite 201
Brooklyn, NY 11201

---

[1] This Memorandum has been amended to comply with this Court's Individual Practices, Rule III(C), by including a Table of Authorities and Exhibit 3 that have been erroneously omitted in the initial filing.

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ………..…………………………………………… 1

**STATEMENT OF FACTS**…………………………………………………………..2

    1.  **Disparate Treatment of Plaintiff** ………………………………………....…2

    2.  **Continuing and Repeated Acts of Discrimination, Harassment and Retaliation** …………………………………………………3

    3.  **Legal Aid Society's systematic practice of discrimination** ……………....………….6

**LEGAL ARGUMENT** …………………………………………………...……9

    I.      **LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(6)**……………………………..…….9

    II.     **PLAINTIFF'S CLAIMS ARE TIMELY** ………………………………..9

          A.  **The continuing violation doctrine applies to plaintiff's claims, therefore Plaintiff's claims are timely**…………………………..………..10

             1.  **Plaintiff alleges a series a related act, sufficient to form the basis for her claim.** …………………………...…………11

             2.  **Plaintiff alleges a systemic practice of discrimination at legal aid to support her claim**…………………………. 12

    III.    **PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR HOSTILE WORK ENVIRONMENT.** ………………………………….. 12

    IV.    **PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR RACE DISCRIMINATION.** …………………………..………………… 13

**V.      PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR RETALIATION. …...14**

**VI.     PLAINTIFF HAS EXHAUSTED ALL ADMINISTRATIVE
         REMEDIES AND THIS COURT HAS JURISDICTION
         OVER PLANTIFF'S CLAIMS. …………………………………………………..15**

   a. The issue concerning an early issuance of a notice of right-to-sue is not
      jurisdictional in nature…………………………………………………………… 15
   b. Defendant wrongly relies on case law concerning the application of the
      Chevron doctrine in analyzing the early issuance of the notice of right to sue,
      as such cases address the interpretation of 29 C.F.R. § 1601.28(a)(2) which is
      not applicable here. ………………………………………………………………. 19

**CONCLUSION …………………………………………………………………….… 20**

## TABLE OF AUTHORITIES

### CASES

*Anderson News, L.L.C. v. Am. Media., Inc.*, 680 F.3d 162 (2d Cir. 2012------------------------11,15
*Arar v. Ashcroft*, 585 F. 3d 559 (2d Cir. 2009) ------------------------------------------------------ 10
*Arroyo v. WestLB Admin., Inc.*, 213 F.3d 625, 2000 WL 562423 (2d Cir. May 9, 2000)---------- 16
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)------------------------------------------------------ 9, 10
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ------------------------------------------------ 10
*Braham v. Meachum*, 77 F.3d 626 (2d Cir. 1996) ------------------------------------------------11
*Cabrera v. New York City*, 436 F. Supp. 2d 635 (S.D.N.Y 2006) ---------------------------------- 12
*Cadet v. Alliance Nursing Staffing of New York, Inc.*, 632 F.Supp.3d 202 (S.D.N.Y 2022) ------ 15
*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 4667 U.S. 937 (1984) ------------------------------------- 21
*Commodari v. Long Island Univ.*, 89 F. Supp.2d 353 (E.D.N.Y. 2000)------------------------------ 16
*Danzer v. Norden Systems, Inc.*, 151 F. 3d 50 (2d Cir. 1998) ------------------------------------- 14
*Everson v. New York City Transit Authority*, 216 F. Supp.2d 71 (E.D.N.Y. 2002) ---------------- 12
*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)----------------------------------------------------- 10
*Gibb v. Tapestry, Inc.*, 2018 U.S. Dist. LEXIS 204112 (S.D.N.Y. November 30, 2018) ---------- 18
*Hardaway v. Hartford Pub. Work Dep't.*, 879 F.3d 486 (2d Cir. 2018) ----------------------------- 16
*Henschke v. N.Y. Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166 (S.D.N.Y. 1993)--------------------- 19
*Hernandez v. Premium Merch. Funding One, LLC*, 2020 U.S. Dist. LEXIS 122643 (S.D.N.Y.
   July 12, 2020) ------------------------------------------------------------------------------------- 20
*Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296 (S.D.N.Y. 2016) ------------- 13
*Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)----------------------------------- 15

*Lore v. City of Syracuse*, 670 F. 3d 127 (2d Cir. 2012) ------------------------------------------------ 15
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)--------------------------------------------- 15
*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)-----------------------------------------11
*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2017)------------------------------------------- 10
*Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355 (1997)---------------------------------------------- 17
*Patane v. Clark*, 508 F.3d 103 (2d Cir. 2001) ------------------------------------------------------- 13
*Pesce v. Mendes & Mount, LLP*, 2020 WL 7028641 (S.D.N.Y. 2020) ------------------------------ 12
*Rodriguez v. Connection Tech.*, 65 F. Supp. 2d 107 (E.D.N.Y. 1999) ---------------------------- 18, 19
*Skinner v. Switzer*, 562 U.S. 521 (2011) ------------------------------------------------------------ 10
*Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir. 1986). ------------------------------------------- 12
*Spencer v. Banco Real, S.A.*, 87 F.R.D. 739 (S.D.N.Y. 1980)--------------------------------------- 19
*Stafford v. Sealright, Inc.*, 100 F. Supp. 2d 137 (N.D.N.Y. 2000) -------------------------------- 18
*Stetz v. Reecher Enters.*, 70 F. Supp. 2d 119 (N.D.N.Y. 1999)-------------------------------------- 19
*Stidhum v. 161-10 Hillside Auto Ave, LLC*, 2021 U.S. Dist. LEXIS 119043 (E.D.N.Y. June 25, 2021)------------------------------------------------------------------------------------------------ 17
*Todd v. Exxon Corp.*, 275 F. 3d 191 (2d Cir. 2001)-------------------------------------------------11
*True v. N.Y. State Dep't of Corr. Servs.*, 613 F. Supp. 27 (W.D.N.Y. 1984) ------------------------ 19

STATUTES

42 U.S.C. § 2000e-5(f)(1) (1970)-------------------------------------------------------------------- 17
*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 4667 U.S. 937 (1984)---------------------------------------- 21
Rules 12(b), Federal Rules of Civil Procedure ------------------------------------------------------2

**PRELIMINARY STATEMENT**

Plaintiff, Roxanne Ronan ("Ms. Ronan" or "Plaintiff") by and through her counsel, respectfully submits this Memorandum of Law in opposition to Defendant's Legal Aid Society ("Defendant" or "LAS") Motion to Dismiss pursuant to Rules 12(b)(1) and (6 of the Federal Rules of Civil Procedure [Doc. 17] ("Motion"). Defendant's Motion seeks premature dismissal by mischaracterizing both the factual allegations and the governing legal standards, by ignoring key factual allegations that serve as the basis for Plaintiff's claims and by relying on statements and documents outside the four corners of the Amended-Complaint [Doc. 15]. Plaintiff's Amended Complaint is hereto attached as Exhibit 1 ("Compl.").

Contrary to Defendant's assertions, Plaintiff's Amended Complaint specifically alleges that she was subjected to years of continuous racially discriminatory and retaliatory treatment and repeatedly raised concerns about racism at LAS. *See* Compl. at ¶¶ 24-31; *See* Exhibit 4, Declaration of Roxanne Ronan ("Ronan Decl.").[2]  Plaintiff further alleges that her termination followed a pattern of escalating retaliatory action following her engagement in protected activity, including a grievance process that was wrongly made public by LAS leaders, in further retaliation for her complaints concerning discrimination in the workplace in clear violation of LAS's own procedures. *See id.*; *see also* Compl. ¶61. Plaintiff's Amended Complaint further identifies specific white comparators who were not disciplined for similar or worse conduct. *See* Compl. ¶69; *see*

---

[2] Defendant received courtesy notice of Plaintiff's intent to file the documents attached as exhibits to Plaintiff's Declaration, which are also quoted in and relied upon in Plaintiff's Amended Complaint, ahead of the deadline to submit this Response and was given an opportunity to provide its basis for alleging confidentiality. Defendant did not provide such basis to Plaintiff and instead waited until the day on which Plaintiff's response is due to file its unsupported Letter Motion with this Court to prevent the filing of such documents. Absent an order from the Court preventing such filing, Plaintiff has no choice but to submit a complete response to Defendant's motion to Dismiss which includes the documents. Plaintiff will file a response to Defendant's Letter within the deadline set forth by this Court's Rules.

*also* Ronan Decl. at Exhibit E.  Thus, Plaintiff's 25-page Amended Complaint includes well-pleaded factual allegations, spanning 78 paragraphs, that allege a plausible claim of discrimination, hostile work environment, retaliation and wrongful termination, pursuant to the relevant statutes cited therein.

Defendant argues, while ignoring key factual allegations in Plaintiff's Amended Complaint that Plaintiff's claims are time-barred, that Plaintiff fails to state a claim for hostile work environment, discrimination and retaliation. *See* Motion at 7-21. Defendant further wrongly argues that Plaintiff fails to exhaust administrative remedies. *See id.* at 21-25.  In support of its Motion, Defendant provides opposing factual allegations that are best suited for an answer to the Amended Complaint relying on factual allegations outside of the four corners of the Amended Complaint and essentially rendering its "motion to dismiss" a motion for summary judgment at this early juncture, prior to the start of discovery in this case.

Accordingly, for the reasons set forth below, Defendant's Motion to Dismiss must be denied in its entirety.

<u>**STATEMENT OF FACTS**</u>

### 1. Disparate Treatment of Plaintiff

Plaintiff alleges disparate treatment during the entirety of her employment at LAS spanning from the beginning of her employment through her termination, including but not limited to the disparate terms and condition of employment, disparate handling of her grievance procedures and LAS's enforcement of the Collective Bargaining Agreement as well as its own policies and procedures. *See* Compl. ¶ 24; *see also* Ronan Decl.    Specifically, Plaintiff alleges that she was denied the same opportunities as her white counterparts as she was unable to benefits of a collaborative work environment while she was sharing an office with Mr. Meir and LAS refused

2

her request to be moved to a new office. *See* Compl. ¶ 31-33; *see also* Ronan Decl. Plaintiff also alleges that she was subjected to more stringent procedures for confirmation of her credentials at Court and while Mr. Pisciotta was aware of this, did nothing to address it with the court. *See* Compl. ¶ 39; *see also* Ronan Decl.   Similarly, Mr. Pisciotta routinely addressed the concerns of the white employees with the Chief Judge but did nothing to help the plight of the black employees, including Plaintiff. *See id.*   Plaintiff also alleges that she was denied the same opportunities for advancement in the office and was not provided with the same tools to succeed throughout her tenure at LAS and that she, unlike her white counterparts, received minimal guidance and was essentially left to fend for herself.  *See* Ronan Decl.¶22.   Plaintiff also alleges that she was subjected to disparate treatment when requesting coverage for court while her white counterparts were accommodated without issue. *See id.* Plaintiff also alleges that she was subjected to more stringent rules when she requested days off. *See* Ronan Decl. ¶22. Plaintiff further alleges that throughout her tenure, she was also subjected to disparate treatment in the was that the rules were enforced, including but not limited to issuing her a level 2 PIP when LAS would have followed the rules concerning progressive discipline with her white counterparts; being terminated for conduct that that does not lead to discipline when  white employees engage in similar or worse conduct; and being denied paid leave during the grievance process when white employees are not denied such benefit. *See* Compl. ¶77.

## 2.  Continuing and Repeated Acts of Discrimination and Retaliation.

Plaintiff sufficiently alleges that she was subjected to repeated and continuous acts of discrimination and relation during her employment at LAS. Specifically, Plaintiff alleges that she was subjected to specific acts of discrimination by her white colleagues in and outside of court. *See* Compl. ¶ 27. Further, she alleges that in 2020, she complained of a culture of discrimination

3

where white employees were allowed to say racist comments to their black colleagues with impunity, including but not limited to the incident involving the white employee who said that it was his first amendment right to say racially derogatory words. *See* Compl. ¶ 4; *see also* Ronan Decl. ¶13. In the fall of 2020, LAS hired the independent consultant who, through four (4) memoranda, detailed the continuous discrimination that Plaintiff experienced between the fall of 2020 through May 2021. *See* Compl. ¶¶42-44. Following the resignation of the consultant, the discriminatory culture persisted with impunity and was so pervasive that it caused Plaintiff to adjust her schedule so that she could limit the time she spent in the office. *See* Compl. ¶ 49. Even then, the work environment was so hostile that it caused her to develop health issues and she was forced to go on medical leave in December 2022/January 2023. *See* Compl. ¶ 58.  While on leave, there was still no break to the torment she experienced. She was subjected to continuous false accusations concerning client abandonment and was forced to work while on leave, even though this was in violation of the CBA. *See* Compl. ¶ 54; *see also* Ronan Decl. Within a month of her return from leave, she was subjected to unwarranted disciplinary action in the form of a PIP and a final written warning, even though she had never subjected to disciplinary action previously and LAS was supposed to follow the rules concerning progressive discipline. The discrimination she suffered were heightened while on PIP in the months of June, July and August 2023, as Mr. Pisciotta was constantly seeking ways to terminate or further discipline her and her supervisor was constantly harassing her. *See* Ronan Decl. ¶ 22. While she grieved the PIP between April 2023 and July 28, 2023, LAS did not treat her the same way that it treated white employees in the same circumstances and all her complaints concerning discrimination were ignored or dismissed. Ultimately, she was also subjected to a disparate enforcement of the disciplinary rules as she was terminated for the same conduct that does not subject white employees to disciplinary action.

Lastly, during her grievance concerning her termination, LAS also denied her benefits that it regularly provides to white employees. *See* Compl. ¶ 75-77.

Further, in addition to the above, Plaintiff alleges that there are actions that were so repetitive in nature and occurred continuously throughout her tenure that they contributed to a hostile work environment and an overall culture of discrimination at LAS. For instance, her requests for coverage for court appearances throughout the course of her employment with LAS were met with outrage from management while her white colleagues did not have such experience. *See* Ronan Decl.¶ 22. That is even though she would often volunteer to cover her colleagues' cases. *See id*. Although Plaintiff did not specifically state the exact date for each occurrence, she indicated that seeking coverage was a common occurrence with all LAS attorneys and that she was vilified when she attempted to seek that level of support. *See* Ronan Decl. ¶22-a. Another type of repetitive acts of discrimination and retaliation included the lack of support from management in the performance of her daily duties which led her to report the "impact of the lack of support for management" in October of 2022. *See* Ronan Decl. ¶ 22-a. This was unfortunately not rectified and while she was on PIP instead of receiving additional support, she was harassed and demeaned by her supervisor. *See* Ronan Decl. ¶¶32-35.

Plaintiff was also subjected to specific acts of retaliation from LAS. Plaintiff alleges that she was subjected to a campaign of retaliatory acts following her involvement with the investigation conducted by the independent consultant. As the memorandum from the consultant and the email correspondence through which she shared the memorandum with Plaintiff and the supervisors make clear, Plaintiff was heavily involved in reporting the discrimination she suffered at the office. Evidently, in her departing email, the consultant expressed her hope that the leaders start to empathize with Plaintiff "when she says 'ouch' in the office." *See* Compl. ¶ 47; *see also*

Ronan Decl. at Exhibit B. As a direct result of her reports of discrimination to the consultant, which was shared with LAS leaders, she was subject to a campaign of retaliation. LAS was aware that Plaintiff went on medical leave due to the hostile work environment she was subjected to and because of this, LAS through Ms. Moody retaliated against her by making false accusations against her while she was on leave. When Plaintiff objected to the same, she was immediately met with a PIP and a final written warning in April 2023. Further, when Plaintiff grieved the retaliatory nature of the PIP at several grievance hearings with LAS management including LAS's human resources department, Plaintiff's personal grievance information was shared to the entire attorney listserv on multiple occasions and her supervisor subjected her to continuing harassment. When she further objected to the act of sharing her private information with the entire office and the continued harassment, she was experiencing form her supervisor in several meetings that were held in June and July, she was terminated. *See* Ronan Decl.¶32.

### 3. Legal Aid Society's Systematic Practice of Discrimination

Plaintiff's complaint sufficiently alleges a systematic practice of discrimination at LAS. Specifically, Plaintiff alleges that the Attorney in Charge ("AIC"), Chris Pisciotta, and other LAS leaders condoned a culture where white employees and white court officers were able to discriminate against black LAS employees, including Plaintiff, with impunity. *See* Compl. ¶¶ 25-30; 34-35 (evidencing statements made by BALA and ACLA); *see also* Exhibit 4 Ronan Decl. at ¶¶5-7, 10, 12-21, 32-35; Ronan Decl. at A, B, D,E.  The pervasive culture of harassment and race discrimination is what led to the hiring of the independent consultant in 2021. During communications with the independent consultant, it was clear to LAS leaders that there was a culture of discrimination in the workplace, as the independent consultant informed the LAS leaders

6

of the repeated complaints concerning discrimination made by plaintiff and other black employees. See Exhibit 4, Ronan Decl. at Exhibit A.

The fourth and final memorandum shared by the independent consultant on May 12, 2025 specifically highlights the numerous reports of discrimination that the consultant brought to the attention of LAS leaders, which resulted in no change from management. *See id*. at Exhibit A. ("I have named in each of my previous memos how problematic and deeply harmful Chris Pisciotta and Tina Luongo are as leaders of the Legal Aid Society. It is now clear that Janet Sabel does not have the personal commitment to unlearning white supremacy and is therefore incapable or leading this organizing toward the changes I agreed to support.") Further, in her report, the independent consultant specifically cited some of the reports made by certain black employees concerning the systematic practice of discrimination at LAS. *See id.* Exhibit A. The black caucus at LAS also specifically stated that there was a culture of fear that Chris Pisciotta in particular thrived in. See *id.* This culture was not changed following the departure of the independent consultant but was allowed to continue to permeate through the work environment. *See id.* Evidently, the culture was acknowledged in email communications by the only black supervisor at LAS, Maquita Moody who also reported discrimination at the hands of Chris Pisciotta and by the LAS human resources employees upon Plaintiff's report of discrimination and retaliation in July 2023. *See id.* at ¶22. *See also id.* at Exhibit B (consultant stating "however, Maquita has been subjected to racial trauma at LAS for quite some time. She is not in a position to create the safety she and Roxanne deserve").

Plaintiff further alleges that this culture continued through her employment at LAS, following the resignation of the independent consultant, and that throughout 2022 and 2023 she was subjected to disparate treatment in the opportunities  and tools given to her versus her white counterparts, constant harassment by management, having to deal with  additional hurdle for

7

simple things such as requesting tie off, and an overall culture of discrimination on account of her race. *See* Exhibit 4, Ronan Decl. at ¶22.  This "race issue" was acknowledge on multiple occasions by management, and specifically by Ms. Carter at a June meeting where Plaintiff raised her concerns regarding discrimination. See Ronan Decl. ¶30.  However, nothing was done to address this, and LAS instead further retaliated against Plaintiff by terminating her employment.

**4. Procedural History**

On May 28, 2024, Plaintiff filed her Charge of Discrimination ("Charge") with the United States Equal Employment Opportunities Commission ("EEOC"), which was cross-filed with the state and local agencies.   On July 17, 2024, the EEOC issued two documents to Plaintiff:  (1) a Letter of Determination & Notice of Rights ("LOD") indicating that the EEOC determined that LAS "is found to have engaged in employment discrimination in violation of Title VII", and (2) a Conciliation Failure and Notice of Rights, indicating that the EEOC found reasonable cause but was not filing suit on behalf of plaintiff, and instead, the EEOC dismissing the charge and issuing a Notice of Right to Sue ("NRTS").  *See* Exhibit 2, LOD; *see also* Exhibit 3, Conciliation Failure and Notice of Rights. The EEOC also reserved its rights to bring a lawsuit against LAS at a later date or intervene in any suit brought by Plaintiff. *See* Exhibit 2, LOD at 1.  There is no statement concerning Plaintiff or Plaintiff's counsel making a request for a NTRS or the EEOC being unable to complete its investigation of Plaintiff's Charge. *See id*. Rather, as alleged in the Amended Complaint, the EEOC issued the NRTS on its own. *See* Exhibit 1, Amended Complaint at ¶ 9.

8

## **LEGAL ARGUMENT**

### II.    **LEGAL STANDARD**

At the motion to dismiss stage, a court is required to accept "all well-pleaded factual allegations in the complaint as true", construing all reasonable inferences in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Skinner v. Switzer*, 562 U.S. 521, 570 (2011); *Arar v. Ashcroft*, 585 F. 3d 559, 567 (2d Cir. 2009) (en banc) (cert. denied), 560 U.S. 978 (2010); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2017). Although allegations that are "conclusory" are "not entitled to be assumed true", a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, at 579-81.

To succeed on a motion for dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the movant must show that the pleading does not state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (the question is not whether the plaintiff will ultimately prevail, but whether the complaint is sufficient to cross the federal court threshold); *see also Iqbal*, at 678. "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id*. Thus, at this stage, the court is limited to the four corners of a plaintiff's complaints. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Further,

> If, on a motion under Rule 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. [3]

---

[3] To the extent that this Court elects to consider the facts and documents submitted by Defendant that go beyond the four corners of the Complaint, Plaintiff maintains her objection and requests that she be allowed the opportunity to submit additional documentation to address these external facts and documents.

Rule 12(d), Federal Rules of Civil Procedure.

In assessing whether a complaint's factual allegations plausibly give rise to an entitlement to relief, the law "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal" conduct. *Twombly*, 550 U.S. at 556; *see Iqbal* 556 U.S. at 678.  Even if it appears on the face of the pleading that a recovery is very remote and unlikely, so long as the there are facts to support an entitlement to relief, a motion to dismiss must be denied. *See Braham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996).  Accordingly, in reviewing a motion to dismiss at this stage, the court is not tasked with assessing the weight of the evidence offered by either party, instead the court must only assess the legal feasibility of the complaint. *See Anderson News, L.L.C. v. American Media, Inc.*, 680 F. 3d 162, 184-85 (2d Cir. 2012), cert. denied, 568 U.S. 1087 (2013) *see e.g. Todd v. Exxon Corp.*, 275 F. 3d 191, 203 (2d Cir. 2001) ("fact -specific question[s] cannot be resolved on the pleadings.").

## III.    PLAINTIFF'S CLAIMS ARE TIMELY.

### A. The continuing violation doctrine applies to plaintiff's claims and therefore Plaintiff's claims pursuant to Title VII, NYSHRL and NYCHRL are timely.

The Continuing Violation Doctrine provides an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("*Amtrack*").  A plaintiff may establish a continuing violation by showing: (1) "a series of related acts one or more of which are within the limitations period;" or (2) "a systematic policy or practice of discrimination that operated, in part within the limitations period – a systemic violation. *See Amtrack*, 536 U.S. 101 at 107.  Therefore, an employer violates Title VII, "when a

10

workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe and pervasive to alter the employee's employment conditions." *Id.* at 116 (internal quotation and citation omitted).

The Second Circuit has established that the continuing violation doctrine can extend the limitations period for claims of discriminatory acts committed under an ongoing policy of discrimination. *See Everson v. New York City Transit Authority*, 216 F. Supp.2d 71 (E.D.N.Y. 2002). The doctrine applies in many instances, including when there is proof of specific ongoing discriminatory policies or practices, or when specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice. *See id; see also Cabrera v. New York City*, 436 F. Supp. 2d 635 (S.D.N.Y 2006).

1. **Plaintiff alleges a series a related act, sufficient to form the basis for her claims.**

When a plaintiff alleges a hostile work environment claim, the doctrine would apply provided that an act contributing to the claim occurs within the filling period. It does not matter that some of the component acts fall outside of the statutory period. This is because hostile work environment claims, by their very nature, involve repeated conduct that occurs over the course of an extended period of time which, cumulatively may become actionable. *See Amtrak v. Morgan,* 536 U.S. 101 at 115. As long as the employer has engaged in enough activity to make out an actionable hostile work environment claim, an unlawful employment practice has occurred. *See id.* at 115; *see also Pesce v. Mendes & Mount, LLP*, 2020 WL 7028641, at *3-4 (S.D.N.Y. 2020), (the plaintiff was permitted to use time-barred evidence of alleged harassing behavior to establish her hostile work environment claim because the evidence suggested a "multi-year failure" to ensure plaintiff could work" without fearing sexual harassment and assault. Similarly, an employer

11

may become liable for insufficiently responding to hostile acts. *See Snell v. Suffolk County*, 782 F.2d 1094, 1103-04 (2d Cir. 1986).

### 2. Plaintiff alleges a systemic practice of discrimination at LAS to support her claim.

A plaintiff can support a claim for hostile work environment by demonstrating a systemic practice of discrimination through evidence of a pervasive and widespread culture of harassment that is tolerated by the employer.  A prima fascie case of discrimination under the pattern and practice approach is established when the evidence supports a finding of a policy, pattern, or practice of intentional discrimination against the protected group, or protected class. *See Everson v. New York City Transit Authority*, 216 F. Supp.2d 71 (E.D.N.Y. 2002). Here, Plaintiff's Amended Complaint sufficiently alleges a systemic practice of discrimination at LAS. The systemic pattern was not only confirmed by an independent consultant, but it was also never rectified and allowed to continue throughout Plaintiff's tenure. The same systemic failure was even acknowledged by LAS leaders in 2022 and again on multiple occasion in 2023 when Plaintiff continued to make complaints concerning discrimination in the workplace. *See* Ronan Decl. ¶ 30 (Leadership acknowledgement of "race issue" in June 2023); ¶ 22-a (Ms. Moody's October 2022 email stating "I understand the racism you face Roxanne; I face it too: from Chris and the staff, all the time."). This is in addition to all the complaints and instances of discrimination and disparate treatment that plaintiff alleges that she and other black attorneys were subjected to.

### IV.    PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR HOSTILE WORK ENVIRONMENT.

A plaintiff sufficiently pleads a hostile work environment claim when she alleges facts showing that the workplace is permeated with discrimination, intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the condition of her employment and create an abusive

12

environment. *See Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 306 (S.D.N.Y. 2016). "Ultimately, to avoid dismissal under Rule 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment… of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id*. (citing *Patane v. Clark*, 508 F.3d 103, 113 (2d Cir. 2001)).

Here, Defendant's Motion ignores specific allegations made in Plaintiff's Amended Complaint, indicating that the actions that form the basis for her hostile work environment claims were due to her race. *See* Compl. ¶ 117 ("by and through these actions, Defendant created and permitted its owner, agents, officials, to create and maintain an intimidating, insulting, and hostile work environment on the basis of Plaintiff's race, that was so severe and pervasive as to alter the conditions of Plaintiffs employment. Further, Defendant further ignores allegations concerning the pervasive nature of the harassment to which Plaintiff was subjected. *See* generally Ronan Decl. providing details concerning the harassment to which she was subjected at LAS).; *see also e.g.* Compl. ¶ 50-54.

## V. PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR RACE DISCRIMINATION UNDER TITLE VII, NYSHRL AND NYCHRL.

Defendant's position concerning Plaintiff's failure to state a claim with regards to race discrimination ignored well-pleaded allegations in the complaint that are within the statute of limitations as indicated above and further improperly seeks that the court interprets its versions of the facts that are outside of the four corners of the complaint. *See* generally Ronan Decl. (specifying continuing acts of discrimination and disparate treatment on the basis on race). In support of its Motion, Defendant argues, without any legal basis, that Plaintiff's complaint does not state a claim for race discrimination because one of the individuals who took action against Plaintiff was half-black. This argument is without merit as the law is clear that "the proposition

that people in a protected category cannot discriminate against their fellow class members is patently untenable." *See Danzer v. Norden Systems, Inc.*, 151 F. 3d 50, 55 (2d Cir. 1998). Regardless, Plaintiff's Amended Complaint sufficiently alleges facts within the statute of limitations that forms the basis for her claim for discrimination. *See e.g.*, Ronan Decl. ¶22; See Compl. ¶73 (terminated due to her race as white employees are not subject to discipline for similar behavior).    Further, Defendant's motion ignores the allegations in Plaintiff's complaints concerning the disparate treatment in the terms and condition of her employment that she experienced due to her race.

## VI.    PLAINTIFF SUFFICIENTLY PLEADS A CLAIM FOR RETALIATION.

"To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F. 3d 127, 157 (2d Cir. 2012) (internal citations omitted).  "Once an employee makes a prima facie case of … retaliation, the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Here, Plaintiff has made the requisite prima facie showing through factual allegations to properly plead a claim for retaliation and to survive the motion to dismiss, as Plaintiff's factual allegations must be taken as true.  While Defendant has the burden of showing a legitimate, non-discriminatory reason for its actions, the time for Defendant to attempt to meet its burden is not at the motion to dismiss stage, where Defendant is not permitted to argue outside the four corners of the Complaint, nor to put on counterevidence to Plaintiff's well-pled factual allegations.

14

At the motion to dismiss stage, "the question … is not whether there is a plausible alternative to the plaintiff's theory; the question is whether there are sufficient factual allegations to make the complaint's claim plausible." *Cadet v. Alliance Nursing Staffing of New York, Inc.*, 632 F.Supp.3d 202, 227 (S.D.N.Y 2022) (quoting *Anderson News, L.L.C. v. Am. Media., Inc.*, 680 F.3d 162, 189 (2d Cir. 2012) (declining to dismiss retaliation claim despite employer advancing argument as to non-discriminatory intervening cause of termination and declining to resolve the factual disputes between plaintiff and defendant at the motion to dismiss stage because the facts alleged by Plaintiff were sufficient to make plaintiff's claim plausible on its face). Here, Defendant improperly seeks that this Court take its factual allegations concerning a non-discriminatory reason for plaintiff's termination, as true. The test here is whether Plaintiff's Complaint sufficiently alleges that she was subjected to retaliation by Defendant, and her Amended Complainant makes such showing on its face. *See* Compl. ¶ 85-90 (listing specific acts of retaliation against Plaintiff); see also Ronan Decl. ¶.  Plaintiff alleges that her personal information was shared with the entire attorney listserv on three occasions in direct retaliation for her complaints concerning discrimination and retaliation in the workplace during her grievance meetings that occurred in June and July 2023. Further, Plaintiff's August 8th Email correspondence attached as Exhibit D to her declaration, sent one day before her termination, specifically constitutes protected activity. *See* Ronan Decl. ¶¶ 43-52; *id*. at Exhibit D.

## VII.    PLAINTIFF EXHAUSTED ALL ADMINISTRATIVE REMEDIES AND THE COURT HAS JURISDICTION OVER PLAINTIFF'S CLAIMS.

### A. The issue concerning an early issuance of a notice of right-to-sue is not jurisdictional in nature.

As an initial matter, the law in his judicial circuit is clear that the earlier issuance of a right to sue notice is a not a jurisdictional bar to a plaintiff's claim. *See Hardaway v. Hartford Pub. Work Dep't.*, 879 F.3d 486, 491 (2d Cir. 2018) (discussing Supreme Court precedent which held that

exhaustion of administrative remedies is properly treated as an affirmative defense rather than as a jurisdictional issue); *See also Arroyo v. WestLB Admin., Inc.*, 213 F.3d 625, 2000 WL 562423 at *1 (2d Cir. May 9, 2000)( "[Whether or not an early right-to-sue letter is valid, it is clear that the issue is not jurisdictional in nature."); *see also Commodari v. Long Island Univ.*, 89 F. Supp.2d 353, 383 (E.D.N.Y. 2000) (" we hold that the issuance of a right to-sue letter by the EEOC prior to the expiration of the 180-day administrative review period does not operate as a jurisdictional bar to bringing a Title VII action in federal district court […]").

Defendant, in its Motion argues, while misconstruing the facts and the law, that Plaintiff's claims should be dismissed "because she did not obtain from the EEOC a notice of right-to-sue containing a determination from the EEOC that there is no reasonable cause to believe the charge is true **nor allow** the EEOC to retain jurisdiction over the charge for at least 180 days." Motion at 22-23 (emphasis added) (internal quotations omitted). Defendant wrongly relies on *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 361 (1997) in support of its position that Plaintiff has not exhausted her administrative remedies citing, dicta, "a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but he must wait 180 days before doing so." *Id.* However, Defendant conveniently ignores the context within which the Supreme Court discussed the 180-day waiting period, which is as follows:

> On its face, § 706(f)(1) provides little support for the argument that the 180-day provision is such a statute of limitation. Rather than limiting action by the EEOC, the provision seems clearly addressed to an alternative enforcement procedure: if a complainant is dissatisfied with the progress the EEOC is making on his or charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action.

*Id.* This is inapposite, as here, Plaintiff did not circumvent the EEOC's procedures by requesting a NRTS. Rather the EEOC, on its own, concluded its investigation, made its findings, dismissed her charge and issued her a NRTS.

16

Defendant then cites several cases that are distinguishable from the present case. *Stidhum v. 161-10 Hillside Auto Ave, LLC*, 2021 U.S. Dist. LEXIS 119043, at *1 (E.D.N.Y. June 25, 2021) on which Defendant relies involves a plaintiff who requested and received the notice of right to sue before the 180 days had passed and prior to the EEOC's completion of its investigation. Moreover, in *Stidhum* the United States District Court for the Eastern District of New York also held that the defendant raising this issue in a motion to dismiss rather than an affirmative defense would have been inappropriate at this stage of the proceedings, had the plaintiff not attached the Notice of Right-to-Sue to the complaint, which specifically indicated on its face, that the notice was issued at the plaintiff's request even though less than 180 days had passed. *Id.* at 11.  Here, Plaintiff did not make such request, and Defendant attempts to create such factual basis by improperly submitting only one of the two documents which Plaintiff received from the EEOC; conveniently failing to also attach the document titled Conciliation Failure and Notice of Rights, which specifically states "this is official notice from the EEOC of the dismissal of your charge and your right to sue."[4] *See* Exhibit 3, NRTS. Likewise, in *Rodriguez v. Connection Tech.*, 65 F. Supp. 2d 107, 109 (E.D.N.Y. 1999) on which Defendant relies, the EEOC also issued the Notice of Right-to-Sue prior to concluding its investigation and upon the plaintiff's request.

Similarly, all five (5) cases cited by Defendant as persuasive authority are inapposite, and Defendant cannot cite to any binding or persuasive authority that supports its position that a plaintiff fails to exhaust her administrative remedies when the EEOC (1)finalizes its investigation, (2) attempt to conciliate, (3) makes a determination, (4) dismisses a charge and (5) issues a notice of right to sue, without the plaintiff making the request for the Notice of Right-to-Sue. *Gibb v.*

---

[4] Plaintiff provides the Conciliation Failure and Notice of Rights, only for completeness since it was omitted from Defendants Motion while Defendant elected to include the Letter of Determination. Plaintiff's position remains that the document included in Defendant's Motion is outside of the four corners of the Amended-Complaint and thus Defendant does not have any legal or factual basis for its motion to dismiss.

*Tapestry, Inc.*, 2018 U.S. Dist. LEXIS 204112 * 5 (S.D.N.Y. November 30, 2018) (cited by Defendant, cited by Defendant involves a plaintiff who requested and received the Notice of Right-to-Sue from the EEOC prior to the expiration of the 180 days and prior to the EEOC reaching a determination; *Stafford v. Sealright, Inc.*, 100 F. Supp. 2d 137, 138 (N.D.N.Y. 2000)  cited by Defendant involves a plaintiff who requested the notice of right to sue simultaneously with the filing of the Charge of Discrimination; *Stetz v. Reecher Enters.*, 70 F. Supp. 2d 119, 125 (N.D.N.Y. 1999) cited by Defendant emphasized that one of the plaintiff's request for the right to sue 3 weeks after the filing of the charge and another plaintiff's request for the notice even prior to filing her charge served to circumvent the administrative schedule established by congress to attempt to conciliate and to investigate claims; *Henschke v. N.Y. Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 168 (S.D.N.Y. 1993), cited by Defendant involves a plaintiff who requested the NRTS at the same time as the filing of the charge); *True v. N.Y. State Dep't of Corr. Servs.*, 613 F. Supp. 27, 29 (W.D.N.Y. 1984) cited by the Defendant is a case where the EEOC issued the NRTS pursuant to plaintiff's attorney's request; *Spencer v. Banco Real, S.A.*, 87 F.R.D. 739, 741 (S.D.N.Y. 1980), cited by Defendant is one where the plaintiff's counsel requested the NRTS only after having filed the  complaint in federal court prior to the conclusion of the EEOC's investigation.

Here, as recognized by the case cited in Defendant's Motion, the EEOC investigated and attempted to conciliate Plaintiffs claims and essentially effectuated its duty to "make its determination on reasonable **as promptly as possible.**" *See* e.g., *Rodriguez v. Connection Tech*, 65 F. Supp. 2d 107, 111 (E.D.N.Y. Sept. 9, 1999) (citing 42 U.S.C. § 2000e-5 that determination must be made as promptly as possible). Defendant's position not only improperly requires the court to view the facts in light most favorable to itself, by asking this Court to take as factually true, counsel's unverified argument that LAS never received the charge of discrimination from the

18

EEOC[5];  but it also asks the court to set a dangerous precedent- to dismiss claims when the defendant fails, purposely or not, to answer a charge of discrimination, thereby circumventing the congressional intent that the EEOC make a prompt determination of whether the charge is true. In such a case, companies would simply fail to answer a charge in an effort to delay proceedings and in hopes that they can later claim that the EEOC failed to investigate the charge and seek dismissal of a plaintiff's claims.

**B. Defendant wrongly relies on case law concerning the application of the Chevron doctrine in analyzing the early issuance of the notice of right to sue, as such cases address the interpretation of 29 C.F.R. § 1601.28(a)(2) which is not applicable here.**

Defendant misconstrues the law and ignores binding precedent in arguing its position that "circuit courts of appeals that have permitted early notices have analyzed §2000e-5(f)(1) in isolation, erroneously concluded it is ambiguous and then deferred to the EEOC's interpretation of the statute and based their decisions upon a finding that the EEOC's interpretation was reasonable." *See* Motion at 24.  Defendant's Motion specifically cites to cases from the ninth, tenth and eleventh circuits which are not binding on this Court. Further, Defendant ignores cases from this Circuit which specifically rely on the court's interpretation of the statute and the court's equitable determinations to find that an early issuance of the NTRS did not bar a plaintiff's claims. *See e.g. Hardaway*, 879 F.3d at 491; *Arroyo*, 213 F.3d 625, 2000 WL 562423 at *1; *Commodari*, 89 F. Supp.2d at 383.  Further, *Hernandez v. Premium Merch. Funding One, LLC*, 2020 U.S. Dist. LEXIS 122643 (S.D.N.Y. July 12, 2020), cited by Defendant analyzes the EEOC's interpretation of 29 C.F.R. § 1601.28(a)(2), which authorizes the issuance of an early right to sue "**upon request**." *See id.* at *17. This is not the case here where **Plaintiff did not request the NRTS**.

---

[5] It is clear that a defendant's allegation that it did not receive notice of the charge of discrimination does not, it self, bar a plaintiff's ability to pursue an action in federal court. *See Smith v. Am. President Lines, Ltd.*, 571 d. 2d 102, 107 & n.8 (2d Cir. 1978).

Further, it must be noted, many cases in the Second Circuit, including *Hernandez*, aptly emphasized, that the statute does not mandate that the EEOC investigates for the full 180 days. *See id*. at *16. Rather, in circumstances, such as the present case, the statute requires that the EEOC "make its determination on reasonable cause as promptly as possible and, so far as practicable, **not later than 120 days** from the filing of the charge […]. Thus, it is clear that the EEOC is not required to take the full 180 days to make its determination. As such, despite the overruling of *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 4667 U.S. 937 (1984), Defendant's position is not legally sound as Defendant only cited to cases in which the EEOC was unable to complete its investigation due to plaintiff's request for the NRTS. This is not the case here. Defendant's cited authority involves plaintiffs who attempted to circumvent the investigation procedures of the EEOC and made a request for the NRTS and therefore are not applicable to the current case. Further, Defendant's unsupported argument invites a slippery slope by requiring this Court to second-guess the EEOC's determinations, effectively compelling judicial scrutiny beyond mere statutory interpretation and would require this Court to impede on the agency's investigative methods and the basis for its conclusion/determination in each case. This would encroach on the EEOC's autonomy and undermine the agency's discretion in conducting its investigations. Accordingly, Defendant has no legal or factual basis for its position and its Motion must be denied.

## CONCLUSION

Wherefore, Plaintiff has brought forth legitimate claims of discrimination, hostile work environment and retaliation in violation of Title VII, NYSHRL and NYCHRL, supported by detailed factual allegations; and has satisfied all administrative prerequisites. Accordingly, Defendant's Motion to Dismiss must be denied in its entirety.

Dated:  Brooklyn, NY                           Respectfully Submitted,
        May 7, 2025

20

Naphtalie Azor, Esquire
AZOR LAW, PLLC
68 Jay Street, Suite 201
Brooklyn, NY 11201
Phone: (904) 902-3061
nazor@azorlaw.com
info@azorlaw.com
Counsel for Plaintiff

21