**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

ROXANNE RONAN,
Previously known as Roxanne Bailey,

                Plaintiff,

        v.

THE LEGAL AID SOCIETY,

          Defendant.

------------------------------------------------------- X

Case No. 1:24-cv-07201-LDH-RL

**ORAL ARGUMENT REQUESTED**

**DEFENDANT THE LEGAL AID SOCIETY'S REPLY IN**
**SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

**DORSEY & WHITNEY LLP**
51 W. 52nd Street
New York, New York 10007
(212) 415-9200

*Attorneys for Defendant*
*The Legal Aid Society*

## TABLE OF CONTENTS

**Page**

I.    THE COURT SHOULD DISMISS PLAINTIFF'S UNTIMELY CLAIMS........................2

    A.    THE TITLE VII HOSTILE ENVIRONMENT CLAIM IS TIME-BARRED. ..............................................................................................2

    B.    THE CONTINUING VIOLATION DOCTRINE DOES NOT SAVE THE UNTIMELY NEW YORK HOSTILE WORK ENVIRONMENT CLAIMS ..............................................................................................2

II.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS DEFICIENT.................5

III.  PLAINTIFF'S RACE DISCRIMINATION CLAIM IS DEFICIENT...............................6

IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION. ..................................7

V.    PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES. .......................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMTRAK v. Morgan*,
   536 U.S. 101 (2002)................................................................................................4, 5

*Anderson v. City of N.Y.*,
   712 F. Supp. 3d 412 (S.D.N.Y. 2024)......................................................................9

*Anderson v. N.Y.C. Dep't of Fin.*,
   No. 19-CV-7971 (RA), 2020 U.S. Dist. LEXIS 70428 (S.D.N.Y. Apr. 21,
   2020) ........................................................................................................................4

*Bergesen v. Manhattanville Coll.*,
   No. 20-CV-3689 (KMK), 2021 U.S. Dist. LEXIS 135033 (S.D.N.Y. July 20,
   2021) ........................................................................................................................1

*Cadet v. All. Nursing Staffing of N.Y., Inc.*,
   632 F. Supp. 3d 202 (S.D.N.Y. 2022).......................................................................9

*Chin v. Port Auth. of N.Y. & N.J.*,
   685 F.3d 135 (2d Cir. 2012)......................................................................................5

*Deas v. Volunteers of Am.*,
   98 F. Supp. 2d 464 (S.D.N.Y. 2000).......................................................................10

*Everson v. N.Y.C. Transit Auth.*,
   216 F. Supp. 2d 71 (E.D.N.Y. 2002) ........................................................................3

*Friedl v. City of N.Y.*,
   210 F.3d 79 (2d Cir. 2000).........................................................................................1

*McKinnies v. City of N.Y.*,
   No. 23-CV-2567 (HG) (JRC), 2024 U.S. Dist. LEXIS 175977 (E.D.N.Y. Sep.
   27, 2024) ................................................................................................................3, 4

*Moore v. City of N.Y.*,
   No. 15-CV-6600 (GBD) (JLC), 2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3,
   2017), *R&R adopted*, 2017 U.S. Dist. LEXIS 40629 (S.D.N.Y. Mar. 20, 2017)......................5

*Morgan v. AMTRAK*,
   232 F.3d 1008 (9th Cir. 2000), *overruled in part by* 536 U.S. 101 (2002).............................5

*Ndemenoh v. Boudreau*,
   No. 20-cv-4492 (RA), 2023 U.S. Dist. LEXIS 167471 (S.D.N.Y. Sep. 19,
   2023) ................................................................................................................................2

*Rivera v. Brooklyn Hosp. Med. Ctr.*,
   28 F. Supp. 3d 159 (E.D.N.Y. 2014) .................................................................................2

*Rodriguez v. Connection Tech.*,
   65 F. Supp. 2d 107 (E.D.N.Y. 1999) ...............................................................................10

*Scott v. City of N.Y. Dep't of Corr.*,
   641 F. Supp. 2d 211 (S.D.N.Y. 2009).................................................................................1

*Shields v. Citytrust Bancorp.*,
   25 F.3d 1124 (2d Cir. 1994)................................................................................................1

*Soto v. Marist Coll.*,
   No. 17-cv-7976 (KMK), 2019 U.S. Dist. LEXIS 94225 (S.D.N.Y. June 5,
   2019) ................................................................................................................................9

*Spencer v. NYC Dep't of Educ.*,
   No. 1:22-cv-10712 (JLR), 2024 U.S. Dist. LEXIS 26569 (S.D.N.Y. Feb. 15,
   2024) ................................................................................................................................4

*Stinson v. Morningstar Credit Ratings, LLC*,
   No. 1:22-cv-06164 (JLR), 2024 U.S. Dist. LEXIS 148804 (S.D.N.Y. Aug. 16,
   2024) .............................................................................................................................2, 3

**Statutes**

42 U.S.C. § 2000e-5(b) .............................................................................................................9, 10

42 U.S.C. § 2000e-5(f)(1) .................................................................................................................9

**Other Authorities**

29 C.F.R. § 1601.28(a)(2)..................................................................................................................9

In opposing LAS's Motion to Dismiss the Amended Complaint ("Motion") (Dkt. 17), Plaintiff violates the Court's rules by filing her "Amended" Memorandum of Law two days late (Dkt. 23) ("Opposition" or "Opp."), a declaration in which she alleges new, unpled facts and legal theories,[1] and several exhibits not previously referenced in her Complaint (Dkt. 23-4).[2]  Because Plaintiff cannot amend her pleading in her opposition papers, *see Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), the Court should disregard these new theories, allegations, her declaration and new exhibits.[3]  *See Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000).  Even if the Court considered the entirety of Plaintiff's submission, her claims still fail.

In her Opposition, Plaintiff does not respond to the vast majority of arguments and legal authority contained in LAS's Motion.  Unable to defend her claims on the merits, Plaintiff instead resorts to repeating legal conclusions and protestations that she adequately pleaded her claims. Nowhere does Plaintiff identify non-conclusory factual allegations in her Complaint that would prevent the Court from granting LAS's Motion. The Court should dismiss the Complaint with prejudice because Plaintiff has already amended the Complaint once, and she *did not request leave* to file a second amended complaint.  *See Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1132 (2d

---

[1]  Capitalized terms in this Reply Brief shall have the same meaning ascribed to them as in LAS's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint (Dkt. 17).

[2]  Plaintiff baselessly argues that LAS submitted documents with its Motion that "go beyond the four corners of the Complaint." *See* Opp. at 9 n.3.  Plaintiff is wrong, and she advances no argument as to why the Court may not properly consider the exhibits LAS included with its Motion, all of which are either incorporated by reference in the Complaint, integral to it, or are records of which the Court may take judicial notice.  *See* Motion at 2 n.1, 4 n.2, 7 n.3.

[3]  Exhibits A, B and D to Plaintiff's declaration are particularly inappropriate for consideration on this Motion. *See* Dkt. 23-4 at 20-22 (Ex. A), 23-27 (Ex. B), and 30-33 (Ex. D).  Exhibits A and B concern only Plaintiff's time-barred claims.  Additionally, Exhibit B contains two emails, one from May 12, 2021, from which Plaintiff includes a single quotation in the Complaint (Dkt. 23-4 at 24-25), and a second from April 29, 2021 (*id.* at 25-27) that Plaintiff does not mention at all in the Complaint.  Plaintiff does not reference the April 29, 2021 email in the Complaint nor the purported facts and circumstances described in that email.  Therefore, Exhibit B, and in particular the April 29, 2021 email, cannot be considered on this Motion.  *See Bergesen v. Manhattanville Coll.*, No. 20-CV-3689 (KMK), 2021 U.S. Dist. LEXIS 135033, at *4–6 (S.D.N.Y. July 20, 2021).  Similarly, Plaintiff does not reference the email she includes in Exhibit D nor its contents in the Complaint.  Exhibit D contains facts that are entirely extraneous to the Complaint.  The Court therefore should not consider Exhibit D in deciding this Motion.  *See id.* at *4 (declining to consider an exhibit that plaintiff "ma[de] several clear references to" and quoted from twice in the complaint because that was insufficient to incorporate the document by reference) (quotations omitted).

1

Cir. 1994) (affirming dismissal with prejudice where plaintiff did not request leave to amend in opposing the motion to dismiss and had already amended the complaint once); *Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 163–64 (E.D.N.Y. 2014) (same); Transcript of March 3, 2025 pre-motion conference at Tr. at 19:3-5 ("[I]f you do not sufficiently plead these claims, they will be dismissed.  That is it.  You're not going to get another bite at the apple.").

## I.    THE COURT SHOULD DISMISS PLAINTIFF'S UNTIMELY CLAIMS.

### A.    THE TITLE VII HOSTILE ENVIRONMENT CLAIM IS TIME-BARRED.

Plaintiff fails to meaningfully address, and thus implicitly concedes, LAS's argument that her hostile work environment claim under Title VII is time-barred, because she does not allege that an act contributing to a hostile work environment occurred during the limitations period.[4]  *See* Motion at 7-8.  This renders her claim untimely and precludes application of the continuing violation doctrine. *See id.* Plaintiff's conclusory assertion in heading III.A of her brief that the "continuing violation doctrine applies to [her] claims" plainly does not suffice to contest LAS's arguments. *See* Opp. at 10; *Ndemenoh v. Boudreau*, No. 20-cv-4492 (RA), 2023 U.S. Dist. LEXIS 167471, at *15–16 (S.D.N.Y. Sep. 19, 2023).[5]

### B.    THE CONTINUING VIOLATION DOCTRINE DOES NOT SAVE THE UNTIMELY NEW YORK HOSTILE WORK ENVIRONMENT CLAIMS.

Plaintiff does not address, and thus concedes, LAS's argument that she failed to state timely claims for hostile work environment based on alleged conduct by court staff and Edri Meir. *See*

---

[4]  Plaintiff also does not dispute that Twyla Carter's alleged statement that "Plaintiff is harmful to black people" cannot form the basis of a hostile work environment claim as a matter of law, because it occurred after LAS's August 9, 2023 termination of Plaintiff's employment. *See* Motion at 8 n.4.

[5]  Plaintiff also does not dispute that (i) her sole timely claim for discrimination under Title VII arises from LAS's termination of her employment on August 9, 2023, and that (ii) her only timely claim for retaliation under Title VII arises from her employment termination, LAS's denial of her subsequent request for paid leave and an alleged statement by Ms. Carter defending LAS's termination of Plaintiff's employment. *See* Motion at 8.  The continuing violation doctrine does not apply to Plaintiff's claims for discrimination and retaliation because, unlike her hostile work environment claim, these claims are based on "discrete acts." *See Stinson v. Morningstar Credit Ratings, LLC*, No. 1:22-cv-06164 (JLR), 2024 U.S. Dist. LEXIS 148804, at *22 (S.D.N.Y. Aug. 16, 2024).

2

Motion at 9 n.6.[6]  Plaintiff also fails to sufficiently respond to LAS's argument that the continuing violation doctrine does not apply to her hostile work environment claim under the NYSHRL and NYCHRL because her timely allegations of a hostile work environment under those statutes are not "sufficiently related" to her untimely allegations of a hostile work environment to constitute a continuing violation. *See* Motion at 8 n.5; *Stinson v. Morningstar Credit Ratings, LLC*, No. 1:22-cv-06164 (JLR), 2024 U.S. Dist. LEXIS 148804, at *21 (S.D.N.Y. Aug. 16, 2024). In her Opposition, Plaintiff asserts only a legal conclusion that the continuing violation doctrine applies to her hostile work environment claim, but she does not advance any argument as to how or why it supposedly applies. *See* Opp. at 10-12. Unable to defend her claim, Plaintiff resorts to citing case law that merely recites the legal standard, is inapposite or even undermines her claim.  *See, e.g.*, Opp. at 12 (citing *Everson v. N.Y.C. Transit Auth.*, 216 F. Supp. 2d 71, 79 (E.D.N.Y. 2002) (holding argument that continuing violation doctrine applied was "meritless")).

Plaintiff's timely allegations of a hostile work environment are not sufficiently related to her untimely allegations of a hostile work environment because: (i) different actors allegedly engaged in the timely and untimely acts, (ii) the alleged untimely acts involve conduct that is different in kind from the alleged timely acts, and (iii) all of the alleged untimely acts occurred over a year before any of the alleged timely acts occurred.  *See McKinnies v. City of N.Y.*, No. 23-CV-2567 (HG) (JRC), 2024 U.S. Dist. LEXIS 175977, at *13–14 (E.D.N.Y. Sep. 27, 2024).

*First*, the actors who allegedly engaged in the untimely acts include Staten Island court staff and LAS staff attorneys Edri Meir, Michael Gompers and Richard Kopacz. *See* Complaint ¶¶ 27–28, 31–33, 41, 67.  In contrast, Plaintiff alleges that her supervisor, Maquita Moody and "LAS leaders," including Twyla Carter, engaged in the alleged timely acts. *Id.* ¶¶ 50–54, 56, 59, 61, 66,

---

[6]  Plaintiff does not dispute that, to the extent her New York discrimination and retaliation claims are based on conduct that occurred prior to May 28, 2021, they are time-barred.  *See* Opp. at 8-9.

3

75–76. *Second*, the alleged untimely acts are different in kind from the alleged timely acts.  The alleged untimely acts include questioning Plaintiff's credentials in court, yelling at Plaintiff and refusing to acknowledge her. *Id.* ¶¶ 27–28, 31.  In contrast, the alleged timely acts include a request that Plaintiff attend an in-person meeting, sending a Microsoft Teams invitation to discuss Plaintiff's performance and an email denying one of Plaintiff's grievances to the attorney listserv for LAS's Staten Island office, and a statement defending LAS's lawful decision to terminate Plaintiff's employment. *Id.* ¶¶ 51, 57, 61, 76.  *Third*, the approximately 14-month incident-free period between the last untimely act on May 12, 2021 and the first timely act in August 2022 renders it implausible that the alleged timely and untimely acts are "sufficiently related" to constitute a single continuing violation. *See Spencer v. NYC Dep't of Educ.*, No. 1:22-cv-10712 (JLR), 2024 U.S. Dist. LEXIS 26569, at *10–11 (S.D.N.Y. Feb. 15, 2024) (holding incident-free interval of over a year rendered conduct insufficiently related).

The alleged timely and untimely acts are "too attenuated . . . to warrant applying the continuing violation doctrine" here. *See McKinnies*, 2024 U.S. Dist. LEXIS 175977, at *14 ("[W]here the events involved different perpetrators and qualitatively different incidents, spread out over a number of years, the continuing violation doctrine does not apply") (quotations omitted); *Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 U.S. Dist. LEXIS 70428, at *10–13 (S.D.N.Y. Apr. 21, 2020) (continuing violation doctrine did not apply where allegations involved different actors, unrelated acts and a break in temporal continuum between the timely and untimely acts). To get around this, Plaintiff misstates the holding in *AMTRAK v. Morgan*, 536 U.S. 101 (2002), by arguing that the Supreme Court held that, as an alternative to establishing a continuing violation by showing a series of related acts one or more of which occurring within the limitations period, a plaintiff may instead show "a systematic policy or practice of discrimination

4

that operated, in part[,] within the limitations period[']—a systemic violation." *See* Opp. at 10 (quoting *Morgan*, 536 U.S. at 107).  That is wrong. The Supreme Court did not hold that a single plaintiff need not allege a series of related acts and may, instead, establish a continuing violation by showing a "systemic policy" of discrimination. *See Morgan*, 536 U.S. at 107.[7]  In any event, even assuming one *could* establish a continuing violation based on a "systemic violation," as opposed to a series of related acts, Plaintiff supports her contention that she was subjected to a systemic policy of discrimination at LAS, Opp. at 12, using the same conclusory assertions she uses to support her baseless hostile work environment claims.  As discussed below, these arguments fail as a matter of law.[8]

## II.     PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM IS DEFICIENT.

Plaintiff does not seriously contest LAS's arguments for dismissal of her hostile work environment claim.  Nor does she address, let alone distinguish, any of the cases LAS cites in its Motion. In response to LAS's argument that her non-time barred hostile work environment claim under the NYSHRL and NYCHRL is deficient because she fails to plead facts suggesting that LAS engaged in any Allegedly Harassing Conduct because of her race, *see* Motion at 10-12, Plaintiff argues, in a single sentence, that LAS "ignores specific allegations" in the Complaint "indicating" that the Allegedly Harassing Conduct was "due to her race." *See* Opp. at 13. However, Plaintiff

---

[7] In the excerpt Plaintiff quotes from *Morgan*, *see* Opp. at 10, the Supreme Court merely describes the *Ninth Circuit's* holding in the decision below, which the Supreme Court partially overturned.  *See Morgan*, 536 U.S. at 107 (observing that in the Ninth Circuit, *pre-Morgan*, another type of continuing violation could be established by showing "a systematic policy or practice of discrimination that operated, in part, within the limitations period," but neither endorsing nor repudiating that category of a continuing violation); *id.* at 115 n.9 ("We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here."); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 156 (2d Cir. 2012) (explaining that *Morgan* did not directly address whether the continuing violation doctrine applies where there is an ongoing discriminatory policy); *see also Moore v. City of N.Y.*, No. 15-CV-6600 (GBD) (JLC), 2017 U.S. Dist. LEXIS 379, at *40-41 (S.D.N.Y. Jan. 3, 2017), *R&R adopted*, 2017 U.S. Dist. LEXIS 40629 (S.D.N.Y. Mar. 20, 2017).

[8] According to the Ninth Circuit in *Morgan*, "Systemic violations involve demonstrating a company wide policy or practice and most often occur in matters of placement or promotion."  *Morgan v. AMTRAK*, 232 F.3d 1008, 1016 (9th Cir. 2000), *overruled in part by* 536 U.S. 101 (2002).

does not, and cannot, point to allegations of *fact* suggesting that LAS engaged in the Allegedly Harassing Conduct because of her race. Instead, Plaintiff points to a bare legal conclusion that "Defendant created . . . [a] hostile work environment on the basis of Plaintiff's race . . . ." *See id.* (quoting Compl. ¶ 117).

Similarly, in response to LAS's argument that the Allegedly Harassing Conduct amounts to petty slights and trivial inconveniences, Plaintiff argues, in a single sentence, that LAS "ignores allegations concerning the pervasive nature of the harassment to which Plaintiff was subjected." Opp. at 13. To support her argument, Plaintiff nonsensically includes a "see generally" citation to unspecified allegations in her *declaration*—which the Court cannot consider on this Motion, and which was created *after* LAS filed its Motion. As an afterthought, Plaintiff then adds a "see also e.g." citation to paragraphs 50-54 of the Complaint. *See* Opp. at 13. Plaintiff's argument that LAS "ignored" the allegations in paragraphs 50-54 of the Complaint is baseless because LAS specifically addressed them it its Motion. *See* Motion at 9-12.[9]

## III.    PLAINTIFF'S RACE DISCRIMINATION CLAIM IS DEFICIENT.

Plaintiff largely disregards LAS's arguments for dismissal of her race discrimination claim and she fails to distinguish the legal authority LAS cited in its Motion.  Plaintiff appears to abandon her race discrimination claim, except to the extent it is based on the termination of her employment.[10] The sole timely allegation of discrimination that she identifies in her Opposition

---

[9]  Plaintiff does not appear to contest LAS's argument that her allegations regarding an April 6, 2023 Microsoft Teams meeting link and a July 28, 2023 email denying her grievance, which were both sent to an attorney listserv for LAS's Staten Island office, *see* Comp. ¶¶ 56, 61, cannot form the basis of her hostile work environment claim because they amount to no more than petty slights and trivial inconveniences. *See* Motion at 12.  Therefore, to the extent Plaintiff's hostile work environment claim is based on such allegations, it should be dismissed.

[10]  Plaintiff fails to address, and thus concedes, LAS's arguments that: (i) her discrimination claim based on LAS's performance management is deficient, *id.* at 13; (ii) Ms. Carter's alleged statement that "Plaintiff is harmful to black people" does not evidence racial (or retaliatory) animus, *id.* at 14, 20 n.9; (iii) her disparate treatment allegations based on LAS's alleged "violation" of a purported "progressive discipline policy" in the CBA is meritless because no such policy exists, *id* at 15; and (iv) her disparate treatment claim regarding professional opportunities that Mr. Meir received is deficient, *id* at 17 n.7.

6

appears in paragraph 73 of the Complaint and concerns LAS's termination of her employment. *See* Opp. at 14. That allegation, however, is a legal conclusion: "Evidently, LAS terminated Plaintiff because of her race . . . ." Compl. ¶ 73. Plaintiff does not identify any well-plead allegations of fact in the Complaint that support an inference that LAS terminated her employment (or took any other adverse employment actions against her) because of her race. She does not attempt to argue how or why her discriminatory termination claim or any of her other allegations of race discrimination are sufficient (they are not). Instead, Plaintiff resorts to arguing that LAS supposedly "ignored" unspecified allegations in the Complaint.

As LAS argued in its Motion, Plaintiff's discriminatory termination claim is deficient because Plaintiff's allegations of disparate treatment are conclusory. *See* Motion at 13-17. Plaintiff fails to allege facts that would support a reasonable inference that race was a motivating factor in LAS's decision to terminate her employment, because she does not plead facts suggesting that the white employees whom she alleges received more lenient discipline than she did were similarly situated to her. *See id.* Plaintiff does not allege that any of her purported comparators engaged in conduct of a similar nature or seriousness to hers, namely engaging in hate speech and attacking a supervisor while being disciplined for unsatisfactory performance. *See id.*

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION.

Plaintiff fails to address LAS's argument that her retaliation claim should be dismissed because, with few exceptions, the alleged acts upon which it is premised constitute petty slights and trivial inconveniences and fall far short of "materially adverse actions." *See* Motion at 18-19; Opp. at 14-15. Plaintiff also does not contest LAS's argument that she failed to allege that she engaged in protected activity in January 2023 when she purportedly "indicated to LAS leaders that she was forced to take a leave of absence because of [] anxiety," Compl. ¶ 53. *See* Motion at 21. Additionally, Plaintiff does not dispute that LAS's denial of her request for paid leave in August

7

2023 could not have been retaliatory because she had no entitlement to such leave under the CBA or otherwise. *See id.* at 19. By her silence, Plaintiff implicitly concedes each of these arguments.

Plaintiff's retaliation claim should be dismissed in its entirety for the independently sufficient reason that she fails to support an inference of retaliation based on temporal proximity between her purported protected activity and LAS's alleged retaliatory acts. *See* Motion at 20-22. Plaintiff does not dispute LAS's argument that she failed to support an inference of retaliation based on temporal proximity with respect to the alleged protected activity in which she engaged in September 2022, Compl. ¶ 52, and on an unspecified date after April 6, 2023 when she allegedly complained that her PIP was retaliatory, *id.* ¶ 59. *See* Motion at 20-21.

Plaintiff argues *only* that her allegations suffice to support an inference of retaliation based on temporal proximity between a grievance she filed in July 2023, *id.* ¶ 60, and LAS's termination of her employment on August 9, 2023, *id.* ¶ 63. *See* Opp. at 15. Plaintiff erroneously argues that LAS's argument regarding an intervening event requires the Court to accept as true LAS's supposed "factual allegations concerning a non-discriminatory reason for Plaintiff's termination as true." Opp. at 15. Plaintiff misconstrues LAS's argument that her July 28, 2023 email, in which she attacked her supervisor and used hate speech, constitutes an intervening event that defeats an inference of causation based on temporal proximity alone between her July 2023 grievance and LAS's termination of her employment on August 9, 2023. *See* Motion at 22. Contrary to Plaintiff's suggestion, LAS did not "allege facts" in its Motion nor ask the Court to make any factual determinations. Rather, LAS argued that *Plaintiff's allegations* regarding her July 28 email *defeat an inference of causation*, rendering her retaliation claim based on conduct that occurred after July 28, 2023 implausible. *See* Motion at 22.

Courts within the Second Circuit regularly dismiss retaliation claims where, as here, an

8

intervening event defeats an inference of causation based on temporal proximity alone. *See, e.g.*, Motion at 22 (citing cases). *See also Anderson v. City of N.Y.*, 712 F. Supp. 3d 412, 428 (S.D.N.Y. 2024); *Soto v. Marist Coll.*, No. 17-cv-7976 (KMK), 2019 U.S. Dist. LEXIS 94225, at *38–39 (S.D.N.Y. June 5, 2019). Plaintiff's citation to *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202 (S.D.N.Y. 2022) is inapposite because in that case the court did not squarely address the "intervening event" doctrine, and because in order for the court to have granted the defendant's argument for dismissal, it would have had to make a factual determination on a disputed issue— the import of a letter the plaintiff sent. *See Cadet*, 632 F. Supp. 3d at 227–28. In contrast, here, Plaintiff has conceded in her Complaint that she sent the July 28 email attacking her supervisor and using hate speech, all while she was being disciplined for performance, and the Court need not make any factual determination in order to dismiss Plaintiff's retaliation claim.

## V.    PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiff argues, without any legal support, that the Court should excuse her failure to exhaust administrative remedies because she did not request an early Notice from the EEOC, and attempts to distinguish the cases LAS cites in its Motion on that basis. *See* Opp. 16-19.[11] However, none of the cases LAS cites turn on the claimant's requesting an early notice from the EEOC, and Plaintiff offers no explanation why this matters (it does not).[12] Whether Plaintiff requested an early notice from the EEOC has no bearing on the EEOC's statutory obligation to maintain jurisdiction over her Charge for 180 days to investigate her claims and attempt conciliation. *See* Motion at 22 (citing 42 U.S.C. §§ 2000e-5(b) and (f)(1)). The EEOC was not authorized to issue

---

[11] Contrary to Plaintiff's suggestion, LAS did not state nor imply in its Motion that Plaintiff requested an early notice from the EEOC. *See* Motion at 25 n.14.

[12] As Plaintiff concedes, the only regulation that purportedly permits the EEOC to issue early notices when certain prerequisites are met, 29 C.F.R. § 1601.28(a)(2), "is not applicable here." Opp. at 19. Notwithstanding Plaintiff's argument to the contrary, this puts Plaintiff on even worse footing than the plaintiffs in the cases that both parties cite in this Motion, because even if that regulation *were* valid (it is not), it does not apply here. *See* Motion at 25 n.14.

Plaintiff's Notice before 180 days had passed, because the EEOC did not (i) dismiss the Charge upon finding "no reasonable cause to believe the charge is true;" (ii) file its own lawsuit; or (iii) enter into a conciliation agreement. *See* Motion at 23-24 (citing cases).

Plaintiff's argument that her early Notice is valid because the EEOC "dismissed" her charge, Opp. at 16-17, fails because the statute only permits the EEOC to dismiss a charge early upon a finding of "no reasonable cause." *See* 42 U.S.C. § 2000e-5(b). Here, the EEOC found "reasonable cause to believe that violations [had] occurred." Dkt. 23-3 at 1. Where, as here, the EEOC determines that "reasonable cause" exists, it "*shall* endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation and persuasion." 42 U.S.C. § 2000e-5(b) (italics added). Plaintiff baselessly argues that the EEOC "investigated and attempted to conciliate [her] claims," Opp. 18, but Plaintiff did not allege—and could not allege—that the EEOC conducted *any* investigation or attempted *any* conciliation here. Rather, the EEOC acknowledges in Plaintiff's Notice that its determination of "reasonable cause" was based solely on LAS's failure to respond to the Charge, and that it did not attempt conciliation because it "determined [without basis] that efforts to conciliate this charge *would be* non-productive."[13] *See* Notice (Dkt. 18-4 at 1-2) (italics added). In other words, Plaintiff's Notice "was a sham." *See Deas v. Volunteers of Am.*, 98 F. Supp. 2d 464, 466 (S.D.N.Y. 2000). In any event, even if the EEOC *had* attempted to investigate or conciliate Plaintiff's claims, the Notice would still be invalid because the EEOC failed to maintain jurisdiction over Plaintiff's Charge for 180 days. *See Rodriguez v. Connection Tech.*, 65 F. Supp. 2d 107, 112 (E.D.N.Y. 1999).

Dated: New York, New York
      May 29, 2025

---

[13] Plaintiff's argument that LAS asks the Court to accept as true the fact that the EEOC failed to provide LAS with adequate notice of the Charge, is directly contradicted by LAS's acknowledgement in the Motion that this fact is "not material to the exhaustion issue." *See* Motion at 24 n.13.

10

Respectfully submitted,


*/s/ Nicholas J. Pappas*
Nicholas J. Pappas
Krista E. Bolles

DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200
pappas.nicholas@dorsey.com
bolles.krista@dorsey.com

*Attorneys for Defendant*
*The Legal Aid Society*